# CHARLESTON.

GAY NELLE SPERRY v. WILLIAM I. SPERRY *et als.*
and
WILLIAM I. SPERRY v. J. F. JOHNSON *et als.*

Submitted March 13, 1917.   Decided May 22, 1917.

1. PRINCIPAL AND AGENT—*Transaction by Agent in His Own Behalf—Good Faith.*

    The general rule is that an agent is not permitted to enter into any transaction with his principal on his own behalf respecting the subject matter of the agency, unless he acts with entire good faith, without any undue influence or imposition, and makes a full disclosure of all the facts and circumstances attending the transaction. (p. 153).

2. SAME—*Agent's Transaction in Own Behalf—Accounting to Principal.*

    If an agent purchases the property of his principal without making such disclosure and acting in good faith, the principal may have the sale set aside, and compel the agent to reconvey the property to him upon repayment of the purchase money, or so much as has been paid, and account for the rents and profits received by him; and where the principal is infirm or of doubtful business capacity, very slight circumstances will suffice to cause the court to set aside the dealings between principal and agent.   (p. 154).

3. CANCELLATION OF INSTRUMENTS—*Setting Aside Conveyance—Terms—Refund of Money.*

    A court of equity in setting aside a deed upon grounds other than positive fraud may do so upon terms requiring the return of the purchase money or make provision in the final decree for the repayment of that sum out of the property recovered, and it is not a prerequisite to that relief that the bill should offer to refund the money or that it be tendered into court.   (p. 155).

4. DIVORCE—*Decree—Alimony—Earnings or Income.*

    Without some special facts or circumstances calling for that relief it is not error on decreeing divorce to a wife not to set off to her as alimony a specific portion of the property of her husband. As a general rule alimony is payable out of the earnings of the husband or the income from his property.   (p. 156).

5. SAME—*Alimony in Lieu of Dower—Statute.*

    On decreeing divorce a vinculo to a wife the court may, under section 11, chapter 64, Code 1913, provide that the alimony de-

creed shall be in lieu of dower in the lands of the husband, and may under the same provision of the statute limit the decree for alimony to such time as the wife may remarry.   (p. 156).

6.  SAME—*Decree—Reservation of Power to Change Alimony.*
     Upon decreeing divorce the court should reserve the power to subsequently change the amount of alimony, and omitting to do so the error may be corrected on appeal.   (p. 157).

(RITZ, JUDGE, absent).

Appeal from Circuit Court, McDowell County.

Suit for divorce by Gay Nelle Sperry against William I. Sperry and for alimony and maintenance for children, and for injunction against other defendants, and suit by William I. Sperry against J. F. Johnson and others to cancel deeds to such defendants and to cancel a power of attorney to defendant Johnson.  Decree for plaintiff, Gay Nelle Sperry, dissolving an injunction, and dismissing the suit of William I. Sperry, and they appeal.

Affirmed in part.   Reversed in part.   Remanded.

*Litz & Harman, A. G. Fox* and *Sanders & Crockett,* for appellants.

*Anderson, Strother, Hughes & Curd,* for appellees.

MILLER, JUDGE:

The decree sought to have reversed was pronounced in two causes consolidated and heard together.  The first was that of Gay Nelle Sperry versus William I. Sperry, et al., for divorce and alimony, and for the care, custody and support of her infant children, and for an injunction restraining and inhibiting defendant from selling, assigning, encumbering, or otherwise disposing of his real estate or other property, and likewise enjoining and restraining defendants Premier Pocahontas Collieries Company and Welch Coal & Coke Company, from paying over to said Sperry any rents and royalties due or to become due to him under and by virtue of certain leases of coal lands held by them; and also enjoining and restraining defendants T. E. Houston, Johnson Realty Company, and Sam Polon from paying over to

said Sperry any of the moneys owing by them or either of them to him as alleged in the bill until the further order of the court. The ground for the relief sought was the alleged adultery of said Sperry.

The second of said suits was that of William I. Sperry versus J. F. Johnson, Sam Polon and Johnson Realty Company, a corporation, seeking to set aside, cancel, and annul, first, a deed from Sperry and wife, to the Johnson Realty Company, and Sam Polon, of October 16, 1914, purporting to convey to the said grantee what is known and described as the Browns Creek tract, a tract of about eighty two acres; second, a deed dated January 15, 1915, purporting to convey to said Johnson Realty Company, all other property of said Sperry, real and personal, consisting of his interests in a tract of 1204.8 acres, one of 428 acres, one of 24 acres, one of 16 acres, one of 65.5 acres, one of 21.4 acres, one of 789.8 acres, and another of 32.6 acres, the consideration recited in said deed being eleven thousand dollars, acknowledged as paid, and the assumption and payment by the grantee of sundry obligations of the grantee, the persons, firms and corporations to whom owing, but not the amounts due, being specified, "and other good and valuable considerations" to be paid by the said grantee.

The grounds alleged for the relief prayed for were the plaintiff's youth, inexperience, and inebriety; the relationship of principal and agent then existing between plaintiff and Johnson, and the overpowering influence of said Johnson over him, due to such relationship, and to his mental and physical condition, and his strained domestic and financial circumstances, and the alleged fraud and imposition practiced upon him in respect thereto, and for the grossly inadequate price paid.

And in addition to the other prayers the bill also prayed for the cancellation of a certain power of attorney, dated January 2, 1915, executed by said Sperry to said J. F. Johnson, whereby the latter was given full power and authority to sell, convey, and sue for and defend all suits for lands and other property, and to collect all debts and royalties due or to become due the said Sperry, and to defend all actions

against him, except said suit for divorce, and to do all things for and in the name and stead of said Sperry concerning the premises, as fully and completely as if present and acting for and on his own behalf.

Answers are filed, and also certain amended and supplementary pleadings, with answers or replications thereto, and after the taking of a great mass of testimony in both suits and on both sides of the controversies, the court by the decree appealed from, pronounced October 4, 1916, adjudged, ordered and decreed as follows:

"1. That the plaintiff, Gay Nelle Sperry, be and she is hereby absolutely divorced from the defendant, William I. Sperry, and the bonds of matrimony heretofore existing between the said plaintiff and the said defendant be and they are hereby dissolved.

"2. That the injunction heretofore awarded be and the same is hereby dissolved.

"3. That the plaintiff, Gay Nelle Sperry, do have and recover of and from the defendant, William I. Sperry, her costs in and about her original and amended and supplemental bills expended.

"4. That the custody and care of the children of William I. Sperry and Gay Nelle Sperry is hereby awarded and given to the plaintiff, Gay Nelle Sperry.

"5. That the sum of Two Thousand ($2,000.00) Dollars be and is hereby allowed to Messrs. Litz and Harman and Sanders and Crockett as attorneys for the plaintiff, Gay Nelle Sperry, and for prosecuting for her the said divorce proceedings of Gay Nelle Sperry v. William I. Sperry.

"6. That as and for alimony and for the maintenance and support of herself and the said children, the following sums are allowed and decreed to the said Gay Nelle Sperry, for said purposes, against the defendant, William I. Sperry, viz: The sum of One Hundred and Twenty-five ($125.00) Dollars per month for the period of four (4) years from the date hereof; the sum of One Hundred and Fifty ($150.00) Dollars per month for the period of six (6) years, beginning at the expiration of the period of four (4) years above, and after the expiration of said six (6) year period, the sum of

Two Hundred ($200.00) Dollars per month until the said children and each of them shall become twenty-one (21) years of age or shall die. After each of said children shall become twenty-one (21) years of age, One Hundred ($100.00) Dollars per month.

"It is further adjudged, ordered and decreed that if either of said children shall die at any time hereafter before becoming twenty-one (21) years of age, the allowances hereinabove shall be reduced as follows: If either of said children shall die within the following four (4) years, twelve and 50/100 ($12.50) Dollars, or Twenty-five ($25.00) Dollars in the event they both shall die, for the next six (6) year period Twenty-five ($25.00) Dollars per month for each or Fifty ($50.00) Dollars for both; for the next period up to Twenty-one (21) years of age, Fifty ($50.00) Dollars per month for each or One Hundred ($100.00) Dollars for both.

"It is further adjudged, ordered and decreed that in case the said plaintiff, Gay Nelle Sperry, should remarry or die during the minority of the said children, then the allowances herein made to her shall not be reduced, it being the purpose and intent to decree and there is hereby decreed for the alimony and support of said Gay Nelle Sperry and her said children the said sum of money during the minority of said children which shall not be reduced by the death or remarriage of Gay Nelle Sperry during the minority of said children but if one of said children should die before majority attained, then if Gay Nelle Sperry shall then be dead or married the said amounts shall be reduced one half and if both die the payment of said sums shall cease and end, and in case she should remarry after said children shall reach the age of twenty-one years, the allowances herein made to her shall cease and determine.

"7. It is further adjudged, ordered and decreed that the costs heretofore awarded herein, the counsel fees heretofore awarded herein, and the allowances for alimony and support heretofore awarded herein, shall be and become a charge and lien upon the real estate and all of it conveyed to the Johnson Realty Company by William I. Sperry, by deed dated January 15, 1915, and filed and referred to in the proceed-

ings herein, which deed is hereby referred to for a particular description of the real estate to be charged with said lien. Said sums herein allowed for alimony and support shall be paid to Gay Nelle Sperry monthly.

"8. It is further adjudged, ordered and decreed that the allowance for alimony and support hereinabove decreed are in lieu of and in stead of any and all right of dower or other rights of the said Gay Nelle Sperry in and to any of the property conveyed by said deed, and the title of the Johnson Realty Company in and to said property is confirmed.

"9. It is further adjudged, ordered and decreed that the relief sought against the Johnson Realty Company and other defendants, except William I. Sperry, by Gay Nelle Sperry, in her amended and supplemental bill, be and the same is hereby denied, and it is further adjudged, ordered and decreed that the said Gay Nelle Sperry do take nothing against the said defendants except William I. Sperry, under her said amended and supplemental bill, and it is further adjudged, ordered and decreed, that the plaintiff, William I. Sperry, do take nothing for and on account of his bill of complaint herein, and that the said bill and his said suit be and the same is hereby dismissed and it is further adjudged, ordered and decreed that the defendants to the said bill do have and recover of and from the said plaintiff, William I. Sperry, their costs in that behalf expended, in which shall be taxed an attorney's fee of Twenty ($20.00) Dollars."

Separate appeals were allowed from said decree to each of the appellants, Gay Nelle Sperry and William I. Sperry, upon their separate petitions assigning error. The refusal of the court to set aside the deeds of October 16, 1914, and of January 15, 1915, is assigned as error in both petitions. In addition Mrs. Sperry complains in her petition: (1) That the court should have decreed to her a specific portion of the property conveyed by said deeds as alimony; (2) if not this, then the monthly installments were inadequate for the maintenance and support of herself, and the maintenance and support of her children, and did not constitute a fair equitable proportion of the estate of said Sperry, taking into account all the facts and circumstances in the case; (3) that

the temporary alimony allowed her, one hundred dollars per month, which had been in default since the filing of the bill of the said William I. Sperry should have been decreed to her up to the date of the decree; (4) that the court erred in dissolving the injunction awarded in accordance with the prayer of her original bill; (5) that the allowances of alimony should not have been decreed to her in lieu of her contingent right of dower; (6) that the decree should not have barred her of any alimony or support in the event that she should remarry; (7) and in dismissing the case from the docket, so that proper orders and decrees changing the amount of alimony,' if necessary, upon proper application, and supervising and controlling the sums so decreed to provide for her and her children, might not be pronounced.

In addition to the common errors assigned in both petitions, appellant, William I. Sperry, complains, that the court erred: (1)' In failing to decree an accounting between him and the other defendants, of any and all property that any of them or either of them, or any one of them may have obtained by virtue of said two deeds of conveyance; (2) in failing to cancel, annul, and set aside said power of attorney executed by him to said J. F. Johnson, on January 2, 1915; (3) in dismissing plaintiff's bill of complaint, and denying him relief and giving costs against him.

The decree of divorce is not complained of. In his answer Sperry would neither admit nor deny the charges of adultery, and called for full proof thereof. The fact of adultery is fully proven, and upon the record presented the court was fully justified in dissolving the bonds of matrimony, and also in decreeing the custody of the infant children to the mother. With respect to the subject of alimony and the maintenance and support of the children, and the errors assigned with respect thereto, we reserve these questions to be considered in their order.

Upon the first point of error, assigned in both petitions, we have carefully considered the evidence, and are of opinion that the grounds for setting aside the deed of October 16, 1914, were not sustained, and that the court properly declined to decree cancellation of that deed. At the date of

that deed the relationship of principal and agent did not exist between Johnson and Sperry. The power of attorney from Sperry to Johnson, of January 2nd, 1915, had not then been executed or even contemplated. The proposition of Sperry to sell, and of Johnson, for the Johnson Realty Company, to buy, were not hastily considered or consummated. Johnson seems to have advised Sperry before selling to consult his old guardian, Captain Smith, and was advised by him not to sell. But according to Sperry's own evidence, he was bent on selling to get money and the means of transportation to go on a long journey into the southern states with a prostitute with whom he had become infatuated. The price at which he proposed to sell and did sell and convey the Browns Creek property to the Johnson Realty Company, one hundred and twenty-five dollars per acre, was more than other lands in the same vicinity, of substantially the same character, had recently brought. Both Sperry and his wife joined in that deed. Sperry was not then drunk and incapacitated. That he was addicted to drink, and was a reckless spendthrift, the evidence fully shows, and there is no doubt that he continuously drank large quantities of liquor, and that his mental and moral faculties were by his excesses of various kinds greatly impaired; but we cannot say from the evidence that he was totally incapacitated to transact business, when dealt with fairly and openly in the way which seems to have characterized this transaction. That Johnson knew Sperry from boyhood, and was well acquainted with his character, cannot be doubted, but under the circumstances we are unable to hold him culpable of any fraud or imposition warranting the setting aside of that deed. Nor does the evidence satisfy us of any fraud or imposition practiced upon Mrs. Sperry in obtaining her signature and acknowledgment to that deed. So we affirm the decree as to the deed of October 16, 1914.

But with respect to the deed of January 15, 1915, after having carefully considered the entire record, the facts and circumstances surrounding the parties, their relationship to each other, the value and character of the property, and all other facts and circumstances attending the transaction, we

are further of opinion that that deed, in equity and good conscience, should not be allowed to stand as a valid deed. We cannot undertake to detail all the facts, or the evidence supporting our conclusions. The controlling facts influencing our judgment and established by the evidence, are these: Johnson, was a shrewd business man of mature judgment; he was then the sheriff of McDowell County, and at the instance of one of the coal companies of that county, Sperry had been appointed by him deputy sheriff. Sperry swears, and it is no doubt a fact, that he had great confidence in Johnson. Johnson knew Sperry's antecedents, his father and his mother, both of whom appear to have been brought to an untimely grave by their excessive use of intoxicating liquors. Johnson knew that Sperry had gone off shortly after the deed of October 16, 1914, with a common prostitute, in an automobile, which he had traded to him on the land conveyed by that deed, and had deserted his family. And just before Sperry executed to Johnson the power of attorney of January 2nd, and the deed of January 15, 1915, Johnson found him living in unlawful cohabitation with this woman in Cincinnati, and knew that he had been sued by his wife for divorce, and of the injunction awarded therein, and that he had incurred debts which were pressing, and some of which had been put in suit, and that he was then in serious domestic and financial trouble. And there is some evidence tending to show that Johnson had been endeavoring to locate Sperry between the date of his departure for the south, and January 2nd, when he executed to him the power of attorney referred to. Which first proposed the power of attorney is to some extent controverted; but after learning from Johnson, and perhaps from one or two other persons, that his wife had sued him for divorce' and had tied up all his property by injunction, and finding himself without money and means of support, Sperry probably proposed to Johnson to appoint him attorney in fact, with the most ample powers of sale and disposition of his property, and without requiring of him any bond or security whatsoever. The plain purpose of Sperry, disclosed by the instrument, and the admission of the parties in their evidence, was, that

Johnson with his superior skill and ability would be able to straighten out the entangled domestic and financial affairs of Sperry, and save his property from sacrifice, and it was then his expressed wish that his wife and children should be secured in the title or possession of at least one half of the property.

Armed with this power of appointment, and having thus accepted the agency, Johnson returned to his home in Welch, McDowell County, where Sperry had also lived many years, and at once employed his brother-in-law, a surveyor, to look up and obtain a correct and accurate description of all the property of Sperry, and after also procuring a modification of the injunction in Mrs. Sperry's divorce suit, to the extent of allowing him, as attorney in fact for Sperry, to continue to collect the rents and royalties on coal productions, the actual income from which, according to the finding of the court below, amounts to some five thousand dollars per year, and also other moneys that might be due or owing to Sperry, he returned to Cincinnati with the avowed object of buying the property. Whether Johnson had also obtained full information as to the debts and liabilities of Sperry, the evidence leaves in doubt; he claims to have obtained this information from Sperry himself, when he met him in Cincinnati, on the day the deed was executed, and when he there proposed to him to buy the property. This he did notwithstanding the injunction pending prohibiting Sperry from selling or otherwise disposing of his property, and without disclosing to Sperry the fact that he had obtained the modification of that injunction. The price proposed by him was ten thousand dollars, and in addition to assume and pay Sperry's debts enumerated in the deed, and according to his evidence to also take the place of Sperry in the divorce suit, which proposition he says Sperry accepted with the modification that the cash consideration should be eleven thousand dollars in place of ten thousand dollars as proposed by him. In the deed, prepared by an attorney employed by Johnson, reciting the consideration already mentioned, there is no specific assumption by Johnson of any personal liability for any decree for alimony or maintenance and

support. A personal liability would rest upon Sperry, the father, to maintain and support his minor children and to maintain and pay alimony to his divorced wife. The decree appealed from imposes no such personal liability upon Johnson. By the deed Johnson acquired the property, the subject of Sperry's inheritance, and out of which, if not wasted, Sperry would have been required to maintain and support his children. It is questionable, therefore, whether in making and accepting the deed both parties were not guilty at least of a technical violation of the injunction. Johnson contends that Mrs. Sperry could not complain, inasmuch as he took the place of Sperry in the divorce suit, but this was not and could not be strictly so.

And what were the other facts and circumstances surrounding the transaction? Sperry alleges and swears that he was drunk when he made the deed, or at least so under the influence of liquor, that he did not know or appreciate the effect or character of the transaction. The evidence does not satisfy us that he was in such state of intoxication as to be ignorant of its import and effect. If guilty of all the excesses claimed by him between the date of his departure for the south in October, 1914, and the making of the deed in January, 1915, a period of about three months, he was certainly not in the best mental and physical condition to approach with a proposition to dispose of all of his valuable property. That he was in sore need of money is plainly evident; that Johnson knew of his financial exigencies and circumstances is clearly shown; that Sperry was in such a mental and physical state as to be the easy subject of an improvident bargain could have been and undoubtedly was known to Johnson.

Another fact of significant import noted in the opinion of the court below, is that at the date of the deed Johnson or his company owed Sperry about five thousand dollars, on the Browns Creek land, and there was due him about two thousand dollars on what is called the Houston note, and besides a considerable amount of rents and royalties must have been due from the coal companies accrued since the injunction, and taken altogether sufficient to pay and dis-

·charge a large portion of Sperry's debts, which by the terms
·of the deed Johnson was to assume and pay. While Sperry
may have known this as well as Johnson, Sperry knew that
these moneys had been tied up by the injunction, and did
not know what Johnson knew, and did not disclose to him,
that the injunction had been modified.

That the consideration for the deed was greatly inadequate
·cannot be doubted. The court in its opinion below finds from
the testimony as a fact that the value of the realty conveyed
was not the minimum value testified to by the witnesses, nor
the highest value placed upon the property, but a sum be-
tween the two extremes, about eighty thousand dollars. All
this property the deed gave to Johnson, in addition to the
personal assets conveyed, subject only to the payment of his
debts, amounting to about thirteen thousand dollars, and to
·any decree for alimony and support of the children which
the court might render in the divorce case.

We cannot say from the evidence that the court overesti-
mated the value of the property. The basis of the decree,
namely, the amount of the annual income from the property,
may not have been the correct basis, but we think the evi-
·dence justifies the finding that the property was worth at
least the sum found by the court. We are satisfied, moreover,
that Johnson, as agent for Sperry, would not have considered
for a moment the proposition to sell to a third person this
valuable property at the price at which he purchased it from
his principal.

We are glad to say we do not put our conclusions upon
the ground of total incapacity of Sperry, or actual fraud and
·deception practiced upon him by Johnson. We think it
quite evident that after obtaining from Sperry the power
·of attorney, Johnson concluded that Sperry was bent on
wasting and dissipating the substance of his inheritance, and
that he might as well reap the benefit of a good bargain as
some third person. While such a conclusion may have sat-
isfied his conscience, it does not satisfy the requirements of
law, when the parties stand in such fiduciary or confidential
relations as existed between the parties to the deed.

We base our conclusion to hold the deed void upon the

ground of the constructive fraud present in the transaction. The principle of law applicable to transactions between principal and agent is simple and well understood, and we find it nowhere better or more clearly stated than in 2 C. J., pages 706, 707, where it is said: "As a general rule an agent is not permitted to enter into any transaction with his principal on his own behalf respecting the subject matter of the agency, unless he acts with entire good faith and without any undue influence or imposition, and makes a full disclosure of all the facts and circumstances attending the transaction. The existence of the relation does not of itself forbid transactions between the principal and agent; and, since the above rule exists to protect the principal, it has no application to cases in which the agent openly and fairly deals with the principal, without any concealment or deception, as in such cases an agent is as competent to deal with the principal as another. However, because of possible abuses of the confidence and trust reposed in the agent, and of his commanding influence over the principal, and of the natural conflict of duty and interest in dealings between the principal and the agent, the law views with suspicion, and scrutinizes closely, all dealings between them in the subject matter of the agency, in order to see that the agent has dealt with the utmost good faith and fairness, and that he has given the principal the benefit of all his knowledge and skill, and, if it appears that the agent has been guilty of any concealment or unfairness, or if he has taken any advantage of his confidential relation, the transaction will not be allowed to stand." Our case of *Bell* v. *Bell,* 3 W. Va. 183, point 5 of the syllabus, enunciates the same rule, and is also in accord with the rules and principles laid down in other decisions. See, also, *Jackson* v. *Pleasanton,* 95 Va. 654, on the same proposition.

And with respect to the application of the above rule, it is said at page 707, of the authority first cited: "All gifts procured by agents and purchases made by them from their principals should be scrutinized with a close and vigilant suspicion; and an agent can purchase property from his principal only where he acts in good faith and makes a full dis-

closure of all facts within his knowledge affecting the value of the property. If he does not make such disclosure or act in good faith, the principal may have the sale set aside and compel the agent to reconvey the property to him upon repayment of the purchase money or of so much as has been paid, and to account for the rents and profits received by him; or the principal may allow the conveyance to stand and compel the agent to account to him for such profits as he may have made. Where the consideration given by the agent is very inadequate, or less than the agent can actually procure for the property, or the agent conceals the fact that he is himself the purchaser, or where the principal is infirm and of doubtful business capacity, very slight circumstances will suffice to cause the court to set aside the dealings between the principal and agent." Applying this rule to the case at bar, we are firmly of the opinion that the deed in question should not be allowed to stand as a valid deed between the parties.

But it is said that plaintiffs have not proposed to refund to Johnson the cash consideration paid or the amounts paid out by him on account of the debts and liabilities of Sperry. It is suggested by counsel on the other side that actual fraud was practiced by Johnson and that he is not entitled to be reimbursed for moneys paid out by him. We cannot concur in this view. Besides we do not find actual fraud, but constructive fraud only. Courts of equity in setting aside deeds upon grounds other than positive fraud, may do so upon terms and require the return of the purchase money, or make provision in the final decree for the repayment of that sum out of the property recovered. *Coiron* v. *Millaudon*, 60 U. S. 113, 15 L. ed. 575; *Thackrah* v. *Haas*, 119 U. S. 499, 30 L. ed. 486; *Chapman* v. *Board of County Commissioners*, 107 U. S. 348, 27 L. ed. 378.

The law would be different of course in a suit by a creditor defrauded out of his rights. Here the cash consideration was paid directly to Sperry, and he got the benefit of it. Of course that payment could not affect the rights of Mrs. Sperry to charge the property with alimony or with the support and maintenance of herself and children; but, the property

being sufficient, alimony and the maintenance and support of the children should not stand in the way of doing equity between the parties.

Upon the point of error that a specific portion of the property conveyed to Johnson should have been decreed to Mrs. Sperry as alimony, no special facts or circumstances being shown therefor, as that she brought the property to the marriage, or contributed to its acquisition and the like, the proposition is denied by *Reynolds* v. *Reynolds*, 68 W. Va. 15.

On the next point made by Mrs. Sperry, that the monthly installments are inadequate, we are of opinion on the record presented, that they are not adequate. The decree took away from her dower; the monthly allowances were not in proper proportion to the income of her husband, and were inadequate to maintain her and her children in accordance with their station. Alimony in general is the sum allowed the wife in lieu of dower, and as compensation for the treatment she received, and the amount of the allowance should be reasonably proportionate to her loss. 2 Nelson on Divorce and Separation, section 933a, page 885; *Waas* v. *Waas*, 42 W. Va. 460; *Reynolds* v. *Reynolds,* supra. Our statute giving the power is broad. The decree casts the custody, maintenance and education of the minor children on the mother; and we do not think the amounts allowed adequate under all the facts and circumstances disclosed by the record.

On the next point, we think the decree should have provided for the payment of the arrears of temporary alimony allowed Mrs. Sperry, which were in default since the filing of the bill of William I. Sperry. These sums had been allowed her and she was entitled to have them paid for her maintenance and support.

And in view of our conclusions to set aside the deed of January 15, 1915, it was error also to dissolve the injunction awarded upon plaintiff's bill for divorce.

Another point is that the alimony allowed Mrs. Sperry should not have been decreed to be in lieu of her contingent right of dower. We think that under section 11, chapter 64, Code 1913, the court had the power so to decree. This proposition was mooted in *Hartigan* v. *Hartigan*, 65 W. Va. 471,

but the question did not arise and was not decided in that case, but the authorities referred to therein we think fully support the proposition. In some courts, owing to peculiar statutes, this proposition is denied. 2 Bishop on Marriage, Divorce and Separation, section 1044, citing two Indiana cases. The same rule applies to the point made that the court erroneously limited the decree for alimony to such time as Mrs. Sperry might remarry. 2 Nelson on Divorce and Separation, section 933, page 884.

And lastly, upon the proposition that error was committed in not providing or reserving in the decree power to subsequently change the amount of alimony, and the sums decreed for the support and maintenance of the children. The statute, section 11, chapter 64, of the Code, so far as the care, custody and maintenance of the children is concerned, makes ample provision for this, and there was no necessity for making any reservation in the decree for that purpose.

But should the court have reserved the right to modify the decree for alimony; has it jurisdiction to do so upon decreeing divorce a vinculo? It is suggested in *Henrie* v. *Henrie,* 71 W. Va. 131, that a majority of the court thought this power was implied by section 11, of chapter 64, but the point was not decided and we think this doubtful. But that case does hold that the court has inherent power to reserve control over its decree, and ample authority is cited in support thereof. But was it error for the court not to have done so in this case? In 1 R. C. L. 946, section 92, it is said: "A decree awarding alimony should always contain a provision reserving the right subsequently to modify the allowance on the application of either party, according to their varying circumstances, and if the trial court should fail so to provide in the award, the same may be remedied on appeal." The case of *Henrie* v. *Henrie, supra,* is an illustration of the eminent propriety of such a reservation. Many statutes of the different states like our statute relating to the care, custody and maintenance of the children, make it unnecessary to reserve this power, the statute itself providing for it.

Respecting the additional points of error assigned by the appellant Sperry, we are of opinion that while the court

might have set aside and cancelled the power of attorney of January 2, 1915, nevertheless no error was committed in not doing so. It was within the power of appellant to revoke that authority at any time. It was not an irrevocable power, but one subject to Sperry's will.

On the last point, error in dismissing Sperry's bill, and denying him relief, we have already indicated the opinion that the court erred therein.

We also note that there should be an accounting between Johnson, the Johnson Realty Company, Polon, and Sperry, for rents and profits, moneys collected, purchase money and debts paid, and expenses properly incurred by Johnson about his said agency, etc.

And finally, what disposition should we make of the case on this appeal? We are clearly of opinion, as already indicated, to affirm the decree dissolving the bonds of matrimony, and giving to Mrs. Sperry the care and custody of the infant children, and denying to plaintiff cancellation of the deed of October 16, 1914; and, as indicated, we might also affirm the decree in certain other particulars, but the record now before us discloses the fact, that there exists a contract between the plaintiffs in these suits and the counsel representing them, whereby it was agreed in substance, that the property recovered, if any, should be divided in the proportion of one third thereof to Mrs. Sperry, another third to William I. Sperry, and the remaining third to counsel for their services in these suits, and that deeds are to be exchanged therefor; and that the proportion to be conveyed or set off to Mrs. Sperry is to be in lieu of all other property rights or claims for alimony, etc., against her husband. If this be a valid and binding contract, which we do not undertake to decide, the questions involved not being presented by any pleadings, and all the parties to that contract not being before the court, neither the property recovered nor the defendant Sperry personally would be liable for alimony at least, and we should not in the absence of the parties undertake to dispose of rights arising under that contract. This contract, however, should likely not preclude the court from making any proper provision for the maintenance and care

of the infant children, as provided by section 11, of chapter 64, of the Code.

Our conclusion, therefore, is to affirm the decree of divorce, and for the custody, care, and maintenance of the children, and denying relief as to the deed of October 16, 1914, but that the same should in all other respects be reversed, and these causes remanded to the circuit court for further proceedings to be had therein in accordance with the rules and principles herein enunciated and directions herein given, and further according to rules and principles governing courts of equity. And appellant Gay Nelle Sperry will be awarded a decree against William I. Sperry for one half the costs incurred by appellants in this court, and the said William I. Sperry a like decree against the said J. F. Johnson and the Johnson Realty Company, for the remaining half of said costs, which we are of opinion will constitute a fair division of the costs between them.

*Affirmed in part. Reversed in part. Remanded.*