309 S.E.2d 68

**Helen NAGY**

v.

**The Hon. Harvey OAKLEY, Judge, etc., et al.**

**No. 15964.**

Supreme Court of Appeals of West Virginia.

Nov. 14, 1983.

W. Bernard Smith, Logan, for petitioner.

Jerry R. White, pro se.

Thomas R. Parks, Logan, for Alex Nagy, Jr.

NEELY, Justice:

This case presents important issues concerning the appointment and payment of special commissioners in the circuit courts to hear divorce cases. The petitioner in this original prohibition, Helen Nagy, filed for divorce in Logan County. Her husband, Alex Nagy, counterclaimed and made several preliminary motions before the circuit court. The circuit court disposed of the preliminary motions and then referred the case to the respondent commissioner, Jerry R. White, to take evidence and make a report to the court.

Mrs. Nagy objected on three occasions to the respondent commissioner's continuing to hear this case. In her verified petition in this court Mrs. Nagy asserts that her grounds for objection were that Commissioner White has a pecuniary interest in the case's outcome. Commissioner White admits that petitioner objected to his hearing the case, but the commissioner denies that the grounds for objection included his alleged pecuniary interest.

Although the record is sparse concerning exactly what transpired below, we awarded a rule to show cause because petitioner alleged that the respondent commissioner refused to file his report with the circuit court until his fees were paid. The respondent commissioner admits that Mr. Nagy has already paid part of his fees before any court order awarding costs, and that he will not file his report until his fees are paid.

In her petition here Mrs. Nagy asserts two grounds for relief. Both grounds arise under *W.Va. Const.* art. III, § 17, which guarantees that "justice shall be administered without sale, denial, or delay." Mrs. Nagy argues that Commissioner White's refusal to file his report until his fees have been paid conditions the rendition of justice upon the financial capacity of the litigants and that the practice of paying commissioners before the circuit court acts on their report encourages commissioners to decide cases in a way that enhances the likelihood of prompt payment. We find merit in both these arguments and we award a moulded writ of prohibition.

I

Three countervailing forces pull at our divorce courts. First, *W.Va. Const.* art. III, § 17 is clear in its mandate that the judicial process shall not be affected by the financial condition of the litigants. Second, there is the time-honored use of special commissioners by courts for certain purposes in both law and equity cases,[1] and

1. For example, *W.Va.Code* 48-2-25 [1969] authorizes the use of commissioners to take testimony in divorce cases with regard to such issues as property rights of the parties, income, character, conduct, children, etc. *W.Va.Code* 51-

5-1 [1923] is a general authorization for circuit judges to appoint from four to six commissioners to take depositions and swear and examine witnesses with regard to suits in chancery or actions at law. *W.Va.Code* 51-6-10 [1923] re-

the specific statutory authorization for a commissioner to hold his report until his fees have been paid under *W.Va.Code* 59–1–8 [1943]. Finally, there is the fact that without the expedient of referring divorce cases to commissioners the delay in trying these cases might become very long and confound the provision of *W.Va. Const.* art. III, § 17, that mandates the administration of justice "without delay."

■■■ The initial blow at this Gordian knot must be a determination that *W.Va. Code* 59–1–8 [1943], which authorizes a commissioner to withhold his report from the circuit court until his fees are paid, is unconstitutional under *W.Va. Const.* art. III, § 17 when applied to divorce cases. Although our statutes and the West Virginia Rules of Civil Procedure both authorize circuit courts to appoint commissioners, (*see* n. 1, *supra*), a court cannot delegate a power to a creature of the court which the court itself does not possess.

It is apparent under *W.Va. Const.* art. III, § 17, that a court cannot condition its own resolution of a case on the advance payment of fees. Although a court can require the statutory filing fee, even this trivial cost must be waived if the litigant is unable to pay. This waiver is specifically required by *W.Va.Code* 59–2–1 [1923]. We have held that an indigent divorce litigant cannot be required to pay for service of process by publication, *Johnson v. Stevens,* 265 S.E.2d 764 (W.Va.1980) and that a clerk cannot withhold divorce orders from recordation for failure to pay the ten dollar fee prescribed by *W.Va.Code* 59–1–11 [1960], *Humphrey v. Mauzy,* 155 W.Va. 89, 181 S.E.2d 329 (1971). Furthermore, our interpretation of *W.Va. Const.* art. III, § 17 concerning free access to court services has not been limited to divorces. Thus, in *State ex rel. Payne v. Walden,* 156 W.Va. 60, 190 S.E.2d 770 (1972) we held that the statutory distress warrant procedure that permitted property of a tenant to

be seized without a hearing unless the tenant posted a bond was unconstitutional because it conditioned a judicial hearing upon ability to pay. Because a circuit court itself cannot condition a litigant's access to the judicial system upon payment of fees, it should be obvious that a court's commissioner cannot so condition access.

The record before us discloses that commissioners in chancery in Logan County typically charge forty dollars an hour. Consequently, if a commissioner devotes only one eight-hour day to a contested divorce his fee will amount to three hundred and twenty dollars—hardly a *de minimis* amount for the average litigant. A person may be financially responsible, but still not be able to find such a sum to *advance* to a commissioner. There is no question, therefore, that a requirement that fees be paid to a commissioner in advance conditions access to the courts for an important matter upon one's ability to pay.

■■■ *W.Va.Code* 59–2–11 [1923] allows a court wide discretion in the allocation of costs in equity proceedings. Although in actions at law under *W.Va.Code* 59–2–8 [1923] costs are always awarded to the *prevailing* party, in an equitable proceeding, particularly a divorce case, the court can require the prevailing party to pay costs. In divorce cases a husband can be required to pay his wife's attorney's fee notwithstanding that the husband is plaintiff and the divorce is awarded in his favor—a perfectly logical extension of the traditional dependence of wives upon their husbands for support. *Lockard v. Lockard,* 193 Neb. 400, 227 N.W.2d 581 (1975); *Seiferth v. Seiferth,* 132 So.2d 471 (Fla. App.1961); *Rudolph v. Rudolph,* 146 So.2d 397 (Fla.App.1962).

■■ Obviously, then, a divorce court can require court costs, including the fees of a commissioner, to be paid by the party in the superior financial position if the court,

quires circuit judges who have appointed a commissioner as a general receiver to require one of the other commissioners in chancery to state and settle the accounts of the general receiver. *W.Va.Code* 56–7–6 [1929] allows a creditor in a chancery cause of action to establish his debt or

demand against a debtor before a commissioner under a decree of reference. *W.Va.Code* 56–7–10 [1923] allows a court in an action at law to direct a commissioner to take and state an account between the parties.

in the exercise of reasonable discretion, finds such an order appropriate. Costs, therefore, are taxed in a discretionary way by a court of equity *after* the conclusion of the case. If a commissioner requires either his fee in advance or security for the payment of his fee, however, the responsibility for paying the fee or posting the security may fall on a party unable to meet it and deny that individual access to justice.

Before final judgment in the circuit court, neither litigant knows for sure who will be taxed with the costs of the commissioner. Nonetheless, if the commissioner demands his fee in advance, the party who is most eager for relief is the one most likely to tender the fee voluntarily. This leads to at least the appearance that preferential treatment may be given to the litigant who pays with alacrity. Although we have greater respect for the members of our bar who serve as commissioners than to believe that financial considerations would influence commissioners' decisions, the appearance of justice is as important as the doing of justice.[2]

█ It is entirely unavailing if our own confidence in commissioners is not shared by the most impecunious litigant who comes before the bar. Somehow, the sight of one's adversary delivering cash to the office of the judge is unlikely to engender an abiding faith in the system's neutrality on the part of the average lay litigant.

Consequently, we hold that in divorce cases the commissioners of the circuit courts cannot condition their holding of hearings or preparation and filing of reports on the advance payment of fees, unless such advance payment is agreed to by the circuit court and all of the litigants at the time the order of reference is entered.

## II

This is the first occasion that this court has had in many years to consider the subject of commissioners in divorce cases. The collective experience of the members of this court instructs us that the use of commissioners varies widely among the fifty-five counties. In busy circuits the reference of contested divorces to commissioners may be a blessing because it both speeds the resolution of the case referred and prevents clogged dockets and consequent delays in handling other civil matters. Furthermore, the use of commissioners to review *pro se* divorce complaints and to assure regularity in routine, uncontested divorces on the basis of reasonable fees for work actually performed may enhance the overall administration of justice.

Nonetheless, we have strong reservations about the extensive use of commissioners by the circuit courts. Certainly a rate of forty dollars an hour is not an unreasonable fee for a skilled lawyer who is providing his own logistical support—

---

2. Canon 9 of the *Code of Professional Responsibility* reads: "A lawyer should avoid even the *appearance* of professional impropriety." (emphasis added) The importance of public confidence is underlined in Ethical Consideration 9–2 which states in relevant part, "On occasion, ethical conduct of a lawyer may appear to laymen to be unethical.... When explicit ethical guidance does not exist, a lawyer should determine his conduct by acting in a manner that promotes public confidence in the integrity and efficiency of the legal system and the legal profession."

Because commissioners act in a quasi-judicial capacity, it is also instructive to look at the *Code of Judicial Conduct.* Canon 2 of that professional code states, "A judge should avoid impropriety and the appearance of impropriety in all his activities." Once again, the comments emphasize the importance of this concept: "A judge must avoid all impropriety and the appearance of impropriety. He must expect to be the sub-

ject of constant public scrutiny. He must therefore accept restrictions on his conduct that might be viewed as burdensome by the ordinary citizen and should do so freely and willingly."

Courts have also noted the importance of maintaining public confidence in the legal system. The point was made eloquently in *Erwin M. Jennings Co. v. DiGenova,* 107 Conn. 491, 499, 141A. 866, 868 (1928):

Integrity is the very breath of justice. Confidence in our law, our courts, and in the administration of justice is our supreme interest. No practice must be permitted to prevail which invites toward the administration of justice a doubt or distrust of its integrity.

More recently, Judge Aldisert of the Third Circuit has written, "[It] is the *appearance,* not the *fact* of impropriety which Canon 9 is designed to eliminate." *Kramer v. Scientific Control Corp.,* 534 F.2d 1085, 1091 (1976) (emphasis in original).

secretary, office space, telephone, postage, etc. But it is also apparent that if the commissioner devotes two eight-hour days to taking testimony and preparing a report, his fee will be six hundred and forty dollars, which is a burdensome expense for the ordinary domestic litigant. And we are mindful that when judges hear cases themselves there is every incentive to expedite the proceedings, while a similar incentive may not be present when a commissioner takes testimony and the meter is ticking minute by minute.

Notwithstanding our reservations, it is still difficult to develop hard and fast rules concerning when cases should be referred to commissioners. Obviously, where both parties wish to expedite the matter and are willing to pay reasonable commissioners' fees to avoid delay, everyone concerned is well served by an order of reference. Where, on the other hand, it is a real burden to the parties to pay commissioners' fees, the circuit court has an obligation to hear the case itself because of the clear mandate concerning free access to the courts of *W. Va. Const.* art. III, § 17. Furthermore, to the extent that political patronage traditions of yesteryear survive and commissioners are paid for performing what amount to ceremonial functions, we disapprove of such practices and will prohibit them when they are called to our attention.

We do not establish a rule limiting the appointment of commissioners to instances where all of the parties agree because in many instances one party will wish to avoid judgment by delay. In a similar vein, it is also not possible to enjoin our circuit judges to hear contested cases in person whenever a party alleges that reference to a commissioner will be a financial burden. A mere preference on the part of litigants that the circuit court hear a case in order to avoid additional costs

cannot be allowed to foreclose reference any more than a mere preference not to pay the statutorily requested filing fee will result in the waiver of that fee. When, however, an objection to an order of reference because of lack of money is combined with an objective showing of financial hardship, the circuit court should place the case on its own docket.[3]

Although we are uncomfortable with the widespread use of commissioners in divorce proceedings, we are equally uncomfortable with a blanket rule eliminating their use. We would prefer a system in which there were sufficient full-time judges to provide swift, publicly-funded hearings in all matters. Our current qualified endorsement of the commissioner system comes from our recognition that it is the legislature and not this court which determines the number of judges. Commissioners have traditionally been used to compensate for shortages in judicial manpower, and we are afraid that their elimination in divorce cases might create justice-defying delays in the dispatch of the entire civil docket.

Accordingly, we approve the use of commissioners in divorce proceedings when three criteria are met: (I) the workload of the circuit court must justify the employment of commissioners to prevent undue delay in the dispatch of the civil docket; (II) the fees of commissioners must be reasonable and awarded only on the basis of work actually performed; and (III) the circumstances of the parties must be such that an undue financial burden is not placed upon them as a result of paying a commissioner.

In the case before us the respondent commissioner of the Circuit Court of the Seventh Judicial Circuit is ordered to prepare and file his report without demanding his fee in advance, and the writ of prohibi-

---

**3.** We emphasize that circuit courts should handle cases where objections are made to reference to commissioners on financial grounds with dispatch. Divorce and custody issues are among the most urgent issues requiring court attention. Although such cases are not entitled to precedence on the docket, we will not coun-

tenance punitive action by trial court judges, and relegation to distant trial dates should not be used to coerce acquiescence to an order of reference. In such instances, mandamus in this court to have the case heard would be a proper remedy.

tion for which petitioner prays is awarded as moulded.

Writ as moulded awarded.