345 S.E.2d 313

John Milburn JONES

v.

Anna Lou JONES.

No. 16381.

Supreme Court of Appeals
of West Virginia.

April 3, 1986.

Rehearing Denied July 9, 1986.

Charles W. Covert, St. Albans, for appellant.

Paul Zakaib, Jr., Charleston, for appellee.

McGRAW, Justice:

The appellant, John Milburn Jones, appeals from a final order of the Circuit Court of Kanawha County, entered in his proceeding for divorce from the appellee, Anna Lou Jones. We address those assignments of error presented by the appellant relevant to our disposition of his appeal. First, the appellant protests the trial court's award of $7,500.00 in attorney fees to the appellee. Second, the appellant objects to the collection of fees by the special commissioner to whom his action was referred by the trial court. Third, the appellant contests the trial court's award of $1,500.00 in monthly alimony to the appellee. Finally, the appellant challenges the trial court's award of $4,050.00 to the appellee for her equity in an automobile that was repossessed following his failure to make monthly loan payments. Following a brief recitation of the procedural history of this litigation, we will address each of these assignments of error.

On June 3, 1979, the appellant filed for divorce from the appellee in the Circuit Court of Kanawha County. On December 3, 1975, the matter was referred to a special commissioner. On May 23, July 25, and September 4, 1980, hearings were conducted by the special commissioner in this matter. On February 3, 1981, the special commissioner reported his findings and recommendations to the trial court. On May 8, 1981, the trial court heard exceptions to the commissioner's report, and returned the case back to the commissioner for taking additional evidence. On July 6, July 7, and September 18, 1981, additional hearings were conducted by the commissioner. On November 30, 1981, the commissioner filed his final report. On January 29, 1982, the trial court heard exceptions to the commissioner's second report. Finally, on June 18, 1982, the final order from which the

appellant appeals was filed by the trial court.

## I

■ The final divorce decree in the instant proceeding provided that "the plaintiff pay all costs of this action and the reasonable attorney fees of the defendant in the amount of $7,500.00." There is no discussion in the decree with respect to the basis of this award. Further, there is no discernible evidence of record that would indicate whether this attorney fee award was reasonable or unreasonable in light of the work performed.

■ In Syllabus Point 1 of *Commonwealth Tire Co. v. Tri-State Tire Co.*, 156 W.Va. 351, 193 S.E.2d 544 (1972), this Court held that:

Rule 52(a) mandatorily requires the trial court, in all actions tried upon the facts without a jury, to find the facts specially and state separately its conclusions of law thereon before entry of judgment. The failure to do so constitutes neglect of duty on the part of the trial court, and if it appears on appeal that the rule has not been complied with, the case may be remanded for compliance.

*See also* Syl. pt. 3, *Aetna Cas. & Sur. Co. v. Pitrolo*, 176 W.Va. 190, 342 S.E.2d 156 (1986); Syl. pt. 5, *Allen v. Allen*, 173 W.Va. 740, 320 S.E.2d 112 (1984); Syl., *Chandler v. Gore*, 170 W.Va. 709, 296 S.E.2d 350 (1982); Syl. pt. 2, *Bills v. Bills*, 170 W.Va. 707, 296 S.E.2d 348 (1982); *Golden v. Board of Education*, 169 W.Va. 63, 285 S.E.2d 665 (1981); Syl. pt. 1, *Spence v. Spence*, 167 W.Va. 704, 280 S.E.2d 307 (1981); Syl. pt. 2, *Pierce v. Pierce*, 166 W.Va. 389, 274 S.E.2d 514 (1981); Syl. pt. 6, *Parkway Fuel Service, Inc. v. Pauley*, 159 W.Va. 216, 220 S.E.2d 439 (1975); Syl. pt. 1, *Peoples Bank of Point Pleasant v. Pied Piper Retreat, Inc.*, 158 W.Va. 170, 209 S.E.2d 573 (1974); Syl. pt. 3, *National Grange Mut. Ins. Co. v. Wyoming County Insurance Agency, Inc.*, 156 W.Va. 521, 195 S.E.2d 151 (1973); *Pettry v. Chesapeake & Ohio Ry. Co.*, 148 W.Va. 443, 449, 135 S.E.2d 729, 733 (1964). With specific reference to an award of attorney fees, this Court recently held in Syllabus Point 4 of *Aetna Cas. & Sur. Co. v. Pitrolo, supra:*

Where attorney's fees are sought against a third party, the test of what should be considered a reasonable fee is determined not solely by the fee arrangement between the attorney and his client. The reasonableness of attorney's fees is generally based on broader factors such as: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed· by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*See also* West Virginia Code of Professional Responsibility DR 2–106(B). Not one of these factors, or any other factor for that matter, was mentioned by the trial court in its final order. Accordingly, we reverse the trial court's award of attorney fees in this action and remand for a hearing and disposition consistent with the foregoing principles.

## II

In a letter dated July 14, 1981, the special commissioner to whom the appellant's divorce action was referred informed the appellant's attorney that, "I would require a deposit from Mr. Jones of at least $1,500.00 to ensure the prompt payment of my fees herein.... I will not give the matter further attention or more time until the $1,500.00 deposit is made." This amount was paid by the appellant to the special commissioner on September 18, 1981. Previously, it appears that the appellant had paid the special commissioner amounts totalling $1,125.00, for a total fee of $2,625.00. In his final report, the special commissioner stated that, "Your commis-

sioner recommends that the plaintiff be assessed costs of the proceedings herein, including a fee for your Commissioner, in the amount of Fifteen Hundred Dollars ($1,500.00)." It is unclear as to whether this amount included or was in addition to the $2,625.00 already advanced. In any event, the final order entered made no reference to the award of commissioner fees.

■ In Syllabus Point 1 of *Nagy v. Oakley,* 172 W.Va. 569, 309 S.E.2d 68 (1983), this Court held that:

W.Va. Const. art. III, § 17, prohibits a commissioner of the circuit court assigned to hear a divorce proceeding from refusing to hear the case, prepare a report, or file a report until his fee is paid, and it is an unconstitutional application of W.Va.Code 59–1–8 [1943] to treat it as authorizing such a practice in divorce cases.

Obviously, the special commissioner's actions in the instant case did not comport with West Virginia Constitution art. III, § 17, which guarantees that "justice shall be administered without sale, denial, or delay."

■ We further held in Syllabus Point 2 of *Nagy v. Oakley, supra:*

Under W.Va.Code 48–2–25 [1969] a circuit court may refer a divorce case to a commissioner if three conditions are met: (I) the workload of the circuit must justify the employment of commissioners to prevent undue delay in the dispatch of the civil docket; (II) the fees of commissioners must be reasonable and awarded only on the basis of work actually performed; and (III) the circumstances of the litigants must be such that an undue financial burden is not placed upon them as a result of paying a commissioner.

Irrespective of the question of the applicability of the first and third criteria, there is no discernible evidence of record that would indicate whether fees collected were reasonable or unreasonable in light of the work performed. In spite of the clear mandate in West Virginia Code § 48–2–25 (1980 Replacement Vol.), that "The [divorce] commissioner shall be allowed for his services

the same compensation as is allowed in other court actions," there is nothing of record to indicate the amount of compensation ordinarily received by special commissioners in the Circuit Court of Kanawha County. At least in the instant case, the divorce commissioner was apparently given carte blanche along with his referral order with respect to the assessment of fees, and unilaterally charged whatever the market would bear.

■ In *Nagy v. Oakley,* 172 W.Va. 574, 309 S.E.2d at 71, this Court observed that, "[A] divorce court can require court costs, including fees of a commissioner, to be paid by the party in the superior financial position if the court, in the exercise of reasonable discretion, finds such an order appropriate. Costs, therefore, are taxed in a discretionary way by a court of equity *after* the conclusion of the case." Rule 54(d) of the West Virginia Rules of Civil Procedure provides, "The clerk shall tax the costs within 10 days after judgment is entered, and shall send a copy of the bill of costs to each party affected thereby." *See also* West Virginia Code §§ 59–2–8, –13, and –15 (1966). Accordingly, the assessment of fees by the divorce commissioner prior to final judgment in the instant proceeding was improper, and we remand this issue for hearing and disposition consistent with the foregoing principles.

### III

In its final order, the trial court in this divorce proceeding held that, "Based upon the entire record and the positions and conduct of the parties, this Court has found fifteen hundred dollars ($1,500.00) per month to be a just and equitable award of alimony to the defendant." The trial court made no specific findings regarding the respective incomes, expenses, or net worths of the parties.

In the special commissioner's final report, which recommended a lump sum alimony award of $5,000.00 and permanent monthly alimony award of $100.00, he noted that the appellant's total income for 1980, as reported on his federal income tax return, was $8,160.00, while the appellee's

net annual income according to her own testimony was $8,320.00. The special commissioner further reported that the appellant's net worth was −$27,502.39, while the appellee's net worth was a calculable $71,892.00.

The appellee objected to the commissioner's calculations of the appellant's net worth. First, she noted that the commissioner erroneously included a mortgage of $32,000.00 in calculating the appellant's total liabilities. Second, she objected to the inclusion of a note for $68,417.98 in the commissioner's calculation of the appellant's total liabilities because payment was contingent upon proceeds from the sale of certain properties falling short of this amount. The trial court, in our view, properly sustained these objections. According to the appellee's own calculations, however, the appellant's net worth, utilizing her formula, should have been reported as $82,915.03, while her own net worth, again utilizing her formula, should have been reported as $71,982.00. Therefore, the appellant's net worth, according to her own calculations, exceeded her net worth by a mere $11,023.03.

■ In the single Syllabus of *Miller v. Miller,* 114 W.Va. 600, 172 S.E. 893 (1934), this Court held that, "Alimony must not be disproportionate to a man's ability to pay as disclosed by the evidence before the court." *See also* Syl. pt. 2, *Sandusky v. Sandusky,* 166 W.Va. 683, 271 S.E.2d 434 (1981); Syl. pt. 2, *Queen v. Queen,* 116 W.Va. 650, 182 S.E. 783 (1936); Syl. pt. 2, *Watson v. Watson,* 113 W.Va. 267, 168 S.E. 373 (1933). Similarly, in Syllabus Point 3 of *Henrie v. Henrie,* 71 W.Va. 131, 76 S.E. 837 (1913), this Court held that, "In determining the amount of alimony, the property and income of the husband, his ability to earn money, and the needs and social standing of the wife should be considered." *See also* Syl. pt. 3, *State ex rel. Cecil v. Knapp,* 143 W.Va. 896, 105 S.E.2d 569 (1958); Syl. pt. 1, *Tressler v. Tressler,* 118 W.Va. 251, 189 S.E. 820 (1937); Syl., *Games v. Games,* 111 W.Va. 327, 161 S.E. 560 (1931); Syl., *Dayton v. Dayton,* 109 W.Va. 759, 156 S.E. 105 (1930); Syl. pt. 1,

*Hale v. Hale,* 108 W.Va. 337, 150 S.E. 748 (1929); Syl. pt. 2, *Norman v. Norman,* 88 W.Va. 640, 107 S.E. 407 (1921); Syl. pt. 5, *Kittle v. Kittle,* 86 W.Va. 46, 102 S.E. 799 (1920); Syl. pt. 4, *Sperry v. Sperry,* 80 W.Va. 142, 92 S.E. 574 (1917); Syl. pt. 2, *Reynolds v. Reynolds,* 72 W.Va. 349, 78 S.E. 360 (1913); Syl. pt. 8, *Reynolds v. Reynolds,* 68 W.Va. 15, 69 S.E. 381 (1910); Syl. pt. 2, *Coger v. Coger,* 48 W.Va. 135, 35 S.E. 823 (1900); Syl. pt. 1, *Wass v. Wass,* 42 W.Va. 460, 26 S.E. 440 (1896). Finally, at the time of the final decree in this action, West Virginia Code § 48–2–16 (1980 Replacement Vol.) provided that, "All judges ... called upon to fix ... an amount of alimony ... shall take into consideration, among other things, the financial needs of the parties, the earnings and earning ability of the husband and wife, the estate, real and personal, and the extent thereof as well as the income derived therefrom of both the husband and wife...." *See also* Syl. pt. 2, *Yanero v. Yanero,* 171 W.Va. 88, 297 S.E.2d 863 (1982).

■ None of the statutory factors was discussed by the trial court in this case. Its award of annual alimony exceeded the total income of the appellant for the most recent tax year reported by $9,840.00. The appellant's assets, most of which were held jointly with the appellee, were not of a type readily transferable into cash. The trial court's possible rationale for awarding alimony in an amount more than double the appellant's income is not apparent from the record. Accordingly, we hold that the award of alimony in this case was excessive, and remand this issue for further proceedings consistent with the foregoing principles.

IV

In its final order, the trial court awarded the appellee $4,050.00 for her equity in an automobile that had been repossessed after the appellant had ceased making payments. This action was taken pursuant to a recommendation by the special commissioner that "the plaintiff restore unto the defendant the equity interest of that certain 1975 Mercedes automobile, as of the date of the

repossession of same." The appellee contended that the appellant had permitted the automobile, which had been purchased as a gift for the appellee by the appellant, to be repossessed in order to prevent its award to the appellee upon their divorce. The appellant contended that the automobile had not been purchased as a gift and that his failure to make payments on the automobile was motivated by impecuniousness and not vindictiveness. The following colloquy at one of the hearings in this matter, however, undermines the appellant's contention that the automobile was not purchased as a gift for the appellee: "Q. That was purchased for your wife wasn't it? A. Yes I had a car." Moreover, the fact that the father of the appellant's girlfriend purchased the automobile from the bank following its repossession undermines the appellant's contention that his failure to continue making payments was motivated only by financial considerations.

In the single Syllabus of *Wallace v. Wallace,* 170 W.Va. 146, 291 S.E.2d 386 (1982), this Court held that, "Spouses are protected from acts before, during or after marriage that are intended to deprive them of part of their marital partners' estates upon which to base claims for support." *See also Patterson v. Patterson,* 167 W.Va. 1, 277 S.E.2d 709, 718 (1981) *overruled on other grounds, LaRue v. LaRue,* 172 W.Va. 158, 304 S.E.2d 312 (1983). Accordingly, we affirm the trial court's award of $4,050.00 to the appellee, representing her equity in an automobile that was repossessed after the appellant ceased making payments.

## V

For the foregoing reasons, the judgment of the trial court with respect to the award of attorney fees, commissioner fees, and alimony is reversed; the judgment of the trial court with respect to the appellee's equity in an automobile given to her by the appellant is affirmed; and, the case is remanded for rehearing and disposition consistent with this opinion.

Reversed in part; affirmed in part; and remanded.