466 S.E.2d 451

**David Arthur HILLBERRY, Plaintiff Below, Appellee,**

v.

**Daisy Mae HILLBERRY, Defendant Below, Appellant.**

No. 22864.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 27, 1995.

Decided Dec. 8, 1995.

Patricia Tolle Hill, Hill and Associates, Morgantown, for Appellee.

Appellant appearing Pro Se.

**PER CURIAM:**

This is an appeal by Daisy M. Bennett, formerly Daisy M. Hillberry (hereinafter "the Appellant"), from an October 18, 1994, order of the Circuit Court of Monongalia County reducing alimony from $1900 to $1200 per month, requiring neither party to pay the other party's attorney fees, and ordering distribution of marital property as previously designated by the family law master. The Appellant contends that the lower court abused its discretion in reducing the alimony recommended by the family law master and in failing to require her former husband, Appellee David A. Hillberry (hereinafter "the Appellee"), to pay her attorney fees, as recommended by the family law mas-

ter. Further, the Appellant maintains that both the family law master and the lower court erred in the computation and distribution of marital assets. We find that the lower court erred in reversing the family law master's decision on the issues of attorney's fees and alimony.

I.

On April 15, 1993, the Appellee initiated divorce proceedings against the Appellant.[1] During a May 3, 1994, hearing before the family law master, evidence was presented by both parties on the Appellant's allegations of cruel and inhuman treatment and adultery, alimony, equitable distribution, and attorney fees. Based upon such evidence, the family law master concluded that there was insufficient evidence to grant a divorce on the grounds of cruel and inhuman treatment or adultery; that the Appellant should receive $1900 per month in alimony; that the Appellee should pay $5000 of the Appellant's attorney fees; that the marital property should be evenly divided; and that the Appellant should assume one-half of an $11,296 marital debt to the Appellee's mother for a loan obtained for the purchase of the parties' home. The divorce was granted, pursuant to West Virginia Code § 48-2-4(a)(7) (1995), on the basis of the parties having lived separate and apart for one year. The family law master's recommendation regarding the amount of alimony was based upon his determination that although the Appellant possessed skills necessary for gainful employment (although not in economic parity with the Appellee), she was unable to maintain employment based upon her lack of self-esteem due to an auto-immune disease causing permanent loss of hair, allergies to metals and certain fabrics, and other physical problems. The family law master stated as follows:

The Defendant has the capability to work, but the jobs she could work at given her age would in no way be sufficient to obtain parity in economic income with her husband. The loss of hair is an added debilitating factor which at this time is of

1. The Appellant and the Appellee, ages 50 and 49 respectively, have been married approximately 30 years and have two children, both emancipated.

much concern and has great emotional impact to the Defendant. The court finds that at this time she has no ability to enter into the job market.

Subsequent to a brief hearing on October 18, 1994, the lower court reduced alimony from $1900 to $1200, based primarily upon the lower court's conclusion that the Appellant had the ability to enter the job market and maintain employment. The lower court stated that the family law master's finding that the Appellant could not enter the job market was in error. The lower court found that the Appellant was a high school graduate, had twelve hours of college credit, and was fully capable of performing secretarial and other office and clerical duties. The lower court also altered the family law master's recommendation by finding neither party responsible for the attorney fees of the other party. In all other respects, the lower court adopted the findings and conclusions of the family law master.

## II. Standard of Review

■ We recently addressed the standard of review for a circuit court in a divorce proceeding where a family law master has taken evidence and ruled on the matters pending before him. *Stephen L.H. v. Sherry L.H.*, 195 W.Va. 384, 465 S.E.2d 841 (1995). In syllabus point one of *Stephen L.H.*, we explained that "[a] circuit court should review findings of fact made by a family law master only under a clearly erroneous standard, and it should review the application of law to the facts under an abuse of discretion standard." *Id.* at 386, 465 S.E.2d at 843. In

syllabus point one of *Burnside v. Burnside*, 194 W.Va. 263, 460 S.E.2d 264 (1995), we explained the following:

> In reviewing challenges to findings made by a family law master that also were adopted by a circuit court, a three-pronged standard of review is applied. Under these circumstances, a final equitable distribution order is reviewed under an abuse of discretion standard; the underlying factual findings are reviewed under a clearly erroneous standard; and questions of law and statutory interpretations are subject to a *de novo* review.

*Id.* at 264, 460 S.E.2d at 265.

### Adultery

■ Neither the lower court nor the family law master in the present case found the alleged adultery of the Appellee to have been sufficiently proven to serve as the grounds for granting a divorce. Pursuant to *Whitmire v. Whitmire*, 175 W.Va. 461, 462, 334 S.E.2d 598, 599 (1985), the adulterous conduct, in order to be pursued as a cause of dissolution or a factor in alimony, must have occurred before the suit to dissolve the marriage was filed. The Appellant's evidence of adultery prior to the filing of the divorce complaint was inconclusive at best.[2] As we stated above, underlying factual findings of a lower court are to be reviewed under a clearly erroneous standard pursuant to our recent opinion in *Burnside*. *See* Syl. Pt. 1, 194 W.Va. at 264, 460 S.E.2d at 265. We do not find the determination of the lower court regarding the evidence of adultery as a ground for divorce to be clearly erroneous.

### Alimony

In the present case, the family law master recommended alimony to the Appellant in

2. The Appellant's evidence of adultery consisted of medical records indicating that the Appellee consulted a physician on February 17, 1993, concerning inability to maintain sexual relations and the assertion that the Appellant had discovered a stain on a sport coat which she believed to be semen and blood after the Appellee returned from a high school class reunion in the summer of 1992. The Appellant contends that the Appellee's concern with his sexual capability evidences at least an intent to engage in sexual relations outside the marriage. The Appellee left the marital home in January 1993, and consulted his physician in February 1993 regarding this problem. The Appellee testified that he had had an

opportunity to engage in sexual relations with some unidentified party after he left the Appellant, but that he could not have such relations due to this medical difficulty. The Appellant also found a greeting card sent to the Appellee a few weeks after the reunion from the woman with whom the Appellee was alleged to have committed adultery. The Appellant also followed the Appellee and observed the woman in the Appellee's automobile. The woman testified that she and the Appellee did not have intercourse until after the divorce papers were filed. The Appellee also asserted that he did not engage in extramarital sexual relations until after the divorce papers were filed.

the amount of $1900 per month. The lower court reduced the alimony from $1900 to $1200 per month, based upon the allegation that the Appellant could earn approximately $8000 annually and that $1900 in alimony was unduly burdensome upon the Appellee. The lower court noted that the Appellee's gross monthly income in each of the first three months of 1994 was approximately $4148.73, which included substantial overtime in February 1994. The Appellee presented evidence indicating that his gross monthly salary in 1993 was $3953.83, which also included overtime pay. The court emphasized that even if the family law master's findings regarding the Appellant's inability to work were correct, the $1900 alimony would be excessive based upon the income and expenses of each party, especially in future months where the Appellee might receive less overtime pay.[3] Appellant alleges error in the reduction of alimony, contending she should be entitled to the amount recommended by the family law master both from an economic standpoint, and in the context of the relative fault of the parties.

We have specifically recognized that overtime pay regularly received is to be considered in determining alimony payments. In syllabus point one of *Rexroad v. Rexroad*, 186 W.Va. 696, 414 S.E.2d 457 (1992), we explained that "[i]n determining the amount of alimony or child support that may be obtained, consideration may be given not only to regular wages earned, but also to the amount of overtime pay ordinarily obtained." *Id.* at 697, 414 S.E.2d at 458. In the present case, evidence of the overtime pay regularly received by the Appellee for a period of one and one-half years prior to the hearing was sufficient for the family law master to conclude that such overtime was ordinarily obtained, and his decision on this matter was not clearly erroneous. *See* Syl. Pt. 1, *Burnside*, 194 W.Va. at 264, 460 S.E.2d at 265.

The Appellant also asserts that the fault of the Appellee should be considered in determining alimony. West Virginia Code § 48–2–15(i) (1995) provides, in pertinent part, as follows:

> In determining whether alimony is to be awarded, or in determining the amount of alimony, if any, to be awarded under the provisions of this section, the court shall consider and compare the fault or misconduct of either or both of the parties and the effect of such fault or misconduct as a contributing factor to the deterioration of the marital relationship.

We have recently emphasized that the relative fault of the parties is a factor to be considered in fixing alimony. In syllabus point one of *Durnell v. Durnell*, 194 W.Va. 464, 460 S.E.2d 710 (1995), we stated as follows:

> 'W.Va.Code, 48–2–15(i) (1991), bars a person from alimony in only three instances: (1) where the party has committed adultery; (2) where, subsequent to the marriage, the party has been convicted of a felony, which conviction is final; and (3) where the party has actually abandoned or deserted the other spouse for six months. In those other situations where fault is considered in awarding alimony under W.Va.Code, 48–2–15(i), *the court or family law master shall consider and compare the fault or misconduct of either or both of the parties and the effect of such fault or misconduct as a contributing factor to the deterioration of the marital relationship.'* Syllabus point 2, *Rexroad v. Rexroad*, 186 W.Va. 696, 414 S.E.2d 457 (1992).

194 W.Va. at 465, 460 S.E.2d at 711 (emphasis added). We recognized in *Durnell* that while evidence of misconduct, specifically adultery in that case, may not be sufficiently proven to "serve as a ground for granting a divorce[,]" such issue is still a valid consideration in the determination of alimony. *Durnell*, 194 W.Va. at 468, 460 S.E.2d at 714. Based upon that principle, the analysis of comparative fault issues becomes a two-prong inquiry; first, evidence must be evaluated for its potential as a ground for divorce, and second, evidence must be evaluated as it

---

3. West Virginia Code § 48–2–15(a) provides that "[a]n award of alimony shall not be disproportionate to a party's ability to pay as disclosed by the evidence before the court." *See Myers v. Myers*, 179 W.Va. 544, 370 S.E.2d 739 (1988); *Jones v. Jones*, 176 W.Va. 438, 345 S.E.2d 313 (1986); *Sandusky v. Sandusky*, 166 W.Va. 383, 271 S.E.2d 434 (1981).

impacts upon the amount of alimony, if any, to be awarded.

### Cruel and Inhuman Treatment

■ The Appellant further contends that the family law master and the lower court should have attached more significance to the Appellant's evidence of cruel and inhuman treatment by the Appellee. The family law master found that while the actions of the Appellee "were grossly insensitive to the condition of the Defendant," they were not cruel and inhuman. He also found that such problems had not existed throughout the marriage and that, generally, "there was evidence of each party helping each other and doing things for each other and engaging and supporting the marital estate and the children." The Appellant presented evidence, however, indicating that the Appellee sexually mistreated the Appellant on at least one occasion and had pulled the Appellant off the couch within weeks of her hysterectomy in a dispute over who would answer the phone on an occasion where the Appellant suspected that the Appellee's paramour was calling.[4] While the evidence of cruel and inhuman treatment may not have provided the specific ground for the divorce, it can nevertheless be considered as a factor in the determination of the amount of alimony, and it appears that the family law master did so. We conclude that evidence of cruel and inhuman treatment was sufficient to justify its inclusion as a factor in the determination of the amount of alimony to be paid, and the family law master was not clearly erroneous in his decision.

### III. Attorney Fees

The Appellant also alleges that the lower court erred by ruling that the Appellee had no obligation to pay $5000 of the Appellant's attorney fees. The family law master had determined that the Appellee would pay $5000 of the Appellant's attorney fees which amounted to approximately $8369. This decision was based in part upon the fact that most of the marital property granted to the Appellee was not liquid and would therefore provide her with no means of paying all of her attorney fees.

■ West Virginia Code § 48–2–13 (1993) provides guidance on the issue of awards of attorney fees in divorce cases. Section 48–2–13(a)(6)(A) provides that "[t]he court may compel either party to pay attorney's fees and court costs reasonably necessary to enable the other party to prosecute or defend the action in the trial court." We have emphasized that the principal inquiry must be whether the financial circumstances of the parties dictate that an award of attorney fees is necessary. In *Langevin v. Langevin* 187 W.Va. 585, 590, 420 S.E.2d 576, 581 (1992), for example, we explained that a decision regarding the payment of attorney's fees is to be made on the basis of the party's financial resources and ability to pay. Likewise, in *Smith v. Smith,* 187 W.Va. 645, 650, 420 S.E.2d 916, 921 (1992), we stated that "[t]he touchstone of the award is that one spouse has a significantly higher income than the other." *See also Wharton v. Wharton,* 188 W.Va. 399, 405–06, 424 S.E.2d 744, 750–51 (1992).

■ The present case does not present us with a factual scenario in which there is a wide discrepancy in income between the parties. However, we also recognized in *Boyle v. Boyle,* 190 W.Va. 655, 661, 441 S.E.2d 376, 382 (1994), that a party may be entitled to attorney's fees where the marital assets assigned to that party are not liquid and could not be easily converted into cash. Each party in this matter received approximately $116,000 in marital assets; however, the family law master found that the assets received by the Appellant were substantially less liquid than those of the Appellee and provided her with no means of paying the attorney fees incurred in defending this action. Furthermore, an examination of the relative fault of the parties in the deterioration of the marriage is a proper consideration

---

**4.** The Appellant also contends that her husband's activities such as attending a high school reunion without the Appellant, failing to demonstrate sufficient sympathy during her surgery and ill health, and going out alone on weekends constituted evidence of his cruel treatment.

in assessing attorney fees. As addressed above, a circuit court should review findings of fact made by a family law master under a clearly erroneous standard. *See* Syl. Pt. 1, *Burnside,* 194 W.Va. at 264, 460 S.E.2d at 265. The decision of the family law master with regard to the issue of attorney fees was not clearly erroneous, and the lower court's reversal on that issue was improper.

## IV. Marital Property Valuation

■ The Appellant also alleges that the lower court erred in the valuation and allocation of marital property. Specifically, the Appellant complains that both the lower court and the family law master erred in accepting the appraisal of Steve Schmidt of the marital home. Pursuant to an agreement between the parties on July 14, 1993, Mr. Schmidt appraised the home and set the value at $120,000. The Appellant submitted a second appraisal in April 1994, valuing the home at $105,000.

West Virginia Code § 48–2–32(d)(1) (1995) provides that marital property is to be valued at the date of the divorce complaint or at such later date as determined by the court to be more appropriate. The second appraisal, performed at the request of the Appellant, was not adopted by the family law master or lower court, and the $120,000 valuation was determined to be more appropriate. The Appellee urges us to affirm that determination based upon West Virginia Code § 48–2–32(d)(1) and upon the fact that the Appellant had already had exclusive possession and control of the marital home for approximately fifteen months prior to the second appraisal of the home. Upon our review of this issue, we do not find the decision of the lower court and family law master clearly erroneous and affirm it with regard to the appraisal most properly utilized in determining the value of the marital home.

■ The Appellant also asserts that the family law master and lower court erred in finding that there was a valid marital debt owed to Mrs. Hillberry, the Appellee's mother, for money borrowed from her to assist the parties in the purchase of the marital home. Mrs. Hillberry testified that the parties had obtained a ready to assemble home and had received $20,500 from the Appellee's parents. The parents had obtained a loan in November 1979 for the $20,500 for twenty years at a rate of 12%. The Appellant and the Appellee provided a Deed of Trust on the marital home to the Appellee's parents for $20,500 with no interest, payable at $215 per month. The parties paid $236.59 per month directly to the bank from December 1979 through the parties' separation in 1993. A representative of the bank also testified that she had dealt directly with the Appellant and the Appellee in the repayment of the loan and was aware that the Appellee's parents had obtained the loan for the parties. The Appellant testified that she thought the $20,500, without interest, for which the Appellant and the Appellee were responsible, had already been repaid. This evidence was heard by the family law master and the lower court, and we have no evidence before us which indicates that the determinations below were clearly erroneous. We therefore affirm the decision of the lower court regarding the existence and required repayment of this debt.

Based upon the foregoing, we affirm the decision of the lower court with regard to the marital debt owed to the Appellee's mother and the appraisal of the marital home. However, on the alimony and attorney fee issues, we reverse the decision of the lower court, reinstate the determination of the family law master, and remand for the lower court's entry of an order consistent with the conclusions herein contained.

Affirmed in part; Reversed in part; and Remanded with directions.