519 S.E.2d 877

**SHARON B.W., Plaintiff Below, Appellee,**

v.

**GEORGE B.W., Defendant Below, Appellant.**

No. 25441.

Supreme Court of Appeals of West Virginia.

Submitted April 14, 1999.

Decided July 14, 1999.

Thomas J. Gillooly, Charleston, West Virginia, Attorney for Appellee.

Michael T. Clifford, Clifford, Mann & Swisher, Charleston, West Virginia, James T.

Cooper, Cooper & Glass, Charleston, West Virginia, Attorneys for Appellant.

PER CURIAM:

This is an appeal by George B.W., appellant/defendant, from an order of the Circuit Court of Kanawha County resolving the financial issues in a divorce proceeding. In the present appeal George B.W. assigns as error: (1) that the circuit judge rendered his decision without having read the record developed before the family law master and overruled portions of the recommended decision to which neither party had objected; (2) that the circuit judge committed error in failing to adopt the family law master's recommendation regarding stocks; and (3) that the circuit judge erred in requiring him to pay certain attorney fees.

## I.

### FACTUAL AND PROCEDURAL HISTORY

The parties to this proceeding, Sharon B.W. and George B.W., were married on May 21, 1988. They had one child born on May 3, 1991. During their marriage they acquired substantial assets. George B.W., is a radiologist. Sharon B.W. has assets acquired from her family. Sharon B.W. filed for divorce on August 10, 1995. The circuit court granted the divorce on June 8, 1998.[1]

On November 25, 1997, a family law master conducted hearings on the parties' financial matters. The family law master found that the parties were separated on April 7, 1995, and concluded that George B.W. was entitled to the stock which he held in Kanawha Valley Radiologists, Inc. (KVR) as his separate property because he had received the stock only after the parties were "separated." In concluding that George B.W. was entitled to the KVR stock as his separate property, the family law master rejected the argument of Sharon B.W. that the parties were actually separated after George B.W. received the stock. The Family Law Master stated:

That Defendant owns one hundred shares of stock in Kanawha Valley Radiologists ("KVR") which has a value of One Dollar ($1.00) per share. The stock was acquired after the parties separated, after the plaintiff moved to Memphis, and after the divorce action was filed by the plaintiff.

In the conclusions of law section of the family law master's recommended decision he stated:

The interest of the Defendant in the KVR stock was acquired after the separation of the parties and is not marital property. The Plaintiff relied on a theory of an "expectation interest" in the KVR stock as constituting marital property. No convincing precedent was cited by Plaintiff's counsel to support his position. The only cases in this jurisdiction in which an "expectation interest" has been found to have a value involved cases in which the "property" was acquired during the marriage. See Metzner v. Metzner, 191 W.Va. 378, 446 S.E.2d 165 (1994) (contingent fee contracts executed during the marriage). Hardy v. Hardy, 186 W.Va. 496, 413 S.E.2d 151 (1991) (personal injury claim for injuries incurred during the marriage) and Smith v. Smith, 190 W.Va. 402, 438 S.E.2d 582 (1993) (Pensions to be received upon retirement from contributions made during the marriage). The evidence in this case on this issue was clear and convincing that the property was not acquired during the marriage and that not every employee was made a shareholder.

The family law master also recommended that Sharon B.W. receive $50,000.00 as rehabilitative alimony. In making the alimony recommendation, the family law master noted that George B.W. was 44 years of age and earned a gross income of approximately $50,000.00 per month. Sharon B.W. was 36 years of age and was a college graduate. Except for one brief period of time, Sharon B.W. had sought no full time employment. The family law master stated:

The standard of living enjoyed by the Plaintiff has been long established by and provided by her parents. During most of

---

1. The child custody questions presented in this case were previously addressed in *Sharon B.W. v. George B.W.*, 203 W.Va. 300, 507 S.E.2d 401 (1998).

her married life she earned at least as much income as her husband. Only at the end of the marriage did the defendant begin to earn substantial sums of money (as an employee of KVR his wages were approximately Fifteen Thousand Dollars ($15,000.00) per month). While the defendant is earning in excess of Fifty Thousand Dollars ($50,000.00) per month, he never approached that level of earnings during the marriage.

After considering the factors relating to alimony, the family law master found:

The parties lived together as man and wife for only three and one half years. Thus, it was by any measure a marriage of short duration. The plaintiff is only 36 years of age. She is in excellent health and she is a college graduate. While she has limited job experience, she is fully capable of employment, although it appears that she does not want to work. While the child is only six years old, he is enrolled in a first class private school and his days will be spent in class .... Additionally, the plaintiff has a stable family support unit in Memphis. Lastly, she has received many thousands of dollars from the defendant in the way of temporary support payments, some of which he made voluntarily, and other court ordered advances, some of which, admittedly, have been used to pay her attorneys .... Based upon these factors, upon her ability to earn both earned and investment income, and based upon the prior finding of abandonment ... it would be unfair, inequitable, and unjust to award permanent alimony to the plaintiff, despite the gross disparity of their current incomes. Additionally, this family law master makes a specific finding that the plaintiff failed to prove any level of need. The only evidence concerning her monthly expenses reveals that the child support award greatly exceeds plaintiff's expenses, even when considering unnecessary expenses such as manicures, massages, etc. Any award of alimony should be rehabilitative in nature to afford the opportunity to improve her own financial condition .... This family law master, therefore, finds that alimony should be of a limited duration and rehabilitative in nature. Given the income disparity of the parties and the amount of child support to be paid by the defendant, the defendant should pay rehabilitative alimony to the plaintiff in a lump sum in order to allow the plaintiff the opportunity to obtain suitable housing for herself. Defendant should pay the plaintiff the lump sum of Fifty Thousand Dollars ($50,000.00) as and for rehabilitative alimony. This sum should be nonmodifiable in order to sever as much of the relationship as possible between the parties.

In addressing the question of attorney fees, the family law master found that Sharon B.W.'s pursuit of an interest in George B.W.'s stock in KVR violated Rule 20 of the Rules of Practice and Procedure for Family Law in W. Va.Code 48–2–13(6)(b). The family law master reasoned that her pursuit of the stock required George B.W. to incur unnecessary legal expenses, the cost of an economic expert, and to miss considerable amounts of time from work. The family law master noted that under Rule 20 of the Rules of Practice and Procedure for Family Law, when it appeared that a party had incurred unnecessary expenses because an opposing party had raised unfounded claims or defenses, it was appropriate to award attorney fees and costs to the innocent party. The family law master, therefore, ruled that George B.W. was entitled to complete reimbursement of his attorney fees and expenses as they related to defending the claim against his stock in KVR, as well as reimbursement for the cost of his economic expert and for replacement physician fees he incurred as a result of his attending hearings on the stock question.

After the family law master submitted his recommended decision, Sharon B.W. filed a petition challenging certain recommendations by the family law master. Sharon B.W. specifically took exception to the family law master's recommendations relating to George B.W.'s stock in KVR, alimony, and attorney fees. Relating to the stock in KVR, Sharon B.W.'s petition excepting to the recommendation of the family law master stated:

The findings and conclusions of the Recommended Order with respect to the De-

fendant's ownership interest in his medical practice are unsupported by and contrary to the evidence, erroneous as a matter of law, and constitute an abuse of discretion.

Her challenge to the amount of alimony stated:

> The amount of alimony awarded in the Recommended Order is grossly inadequate under the facts of the case, is unsupported by the evidence, and constitutes an abuse of discretion. The Recommended Order's factual findings are inadequate to support the award of a mere $50,000 in alimony.

Sharon B.W. also challenged the family law master's recommendations regarding attorney fees:

> The Law Master's attempt to make an award of attorney fees in connection with the litigation of the status of Defendant's interest in his medical practice, in addition to exceeding the Law Master's jurisdiction and the limits placed on the Circuit Court's referral to the Law Master, is unsupported by the evidence, contrary to law, and an abuse of discretion. The status of this asset as marital or non-marital was a legitimate issue, on which Plaintiff's expert, conceded in the Recommended Order (¶ 22, p. 8) to have been well qualified, rendered an opinion supporting the marital conclusion, and on which Plaintiff submitted persuasive legal authority. The fact that the Law Master concluded otherwise after the question was presented and briefed does not establish a basis for penalizing Plaintiff for litigating it. The additional proposed penalty, in the form of reimbursement to Defendant for expenses other than his attorney fees, is likewise contrary to the evidence, erroneous as a matter of law, and an abuse of discretion.

After reviewing the family law master's recommended order, the circuit court refused to adopt key portions of the recommended order. The circuit court found that the parties stayed overnight with each other and continued to have sexual relations after April 1995. Specifically, the circuit court ruled that the date of separation was August 10, 1995. The circuit court further ruled that George B.W.'s stock in KVR was a marital asset. Accordingly, the circuit court held that Sharon B.W. was entitled to one-half the value of George B.W.'s interest in KVR.[2]

Lastly, the circuit court indicated that without the zealous advocacy of counsel, Sharon B.W. would not have gotten her "due." As a consequence, the circuit court rejected the family law master's recommendations relating to attorney fees and ordered that George B.W. pay all of Sharon B.W.'s attorney fees and litigation costs.

Here, George B.W. claims that the circuit court committed certain procedural errors in reversing the decision of the family law master. He also claims that the circuit court should have adopted the family law master's recommendations relating to the KVR stock, relating to alimony, and relating to attorney fees.

## II.

### STANDARD OF REVIEW

■ In reviewing challenges to findings to circuit court's order in a divorce proceeding, a three-pronged standard of review is applied. Under these circumstances, a final equitable distribution order is reviewed under an abuse of discretion standard; the underlying factual findings are reviewed under a clearly erroneous standard; and questions of law and statutory interpretations are

---

**2.** In placing a value on George B.W.'s stock in KVR, the family law master had found that it was subject to a buy-sell agreement and could not be sold on the open market and that its value was only $100. The circuit court rejected this recommendation stating:

> ... Ross Dionne, C.P.A., analyzed the financial records of KVR, including records showing its gross revenues, its billings by physician, and its receivables.
>
> ... Mr. Dionne distinguished medical practices by areas of specialization, and Mr.

Dionne used the data for sales of radiology practices.

> ... Mr. Dionne presented a sound evaluation of the market value of KVR, using generally accepted criteria for the valuation of a business, and adopting a moderate position on estimate market value, in the mid-range of the spectrum of values which this data would support. Consistent with his testimony, the market value of defendant's 20% share of KVR is found to be $385,597.00.

subject to a de novo review. *See* Syl. P.1, *Burnside v. Burnside,* 194 W.Va. 263, 460 S.E.2d 264 (1995); *Hillberry v. Hillberry,* 195 W.Va. 600, 466 S.E.2d 451 (1995).

## III.

## DISCUSSION

**A. The Question of Whether George B.W.'s Stock in Kanawha Valley Radiologists, Inc. was Marital Property**

■ George B.W. contends that the circuit court committed error by failing to adopt the family law master's recommendation that his ownership of stock in his employer's company, Kanawha Valley Radiologists, Inc. (KVR), was nonmarital property. As a general proposition, this Court has noted that the Legislature, by enacting W. Va.Code 48–2–1(e)(1), has indicated that, with certain specified exceptions, all property acquired during marriage is marital property.[3] As stated in Syllabus point 3 of *Whiting v. Whiting,* 183 W.Va. 451, 396 S.E.2d 413 (1990):

> W. Va.Code, 48–2–1(e)(1) (1986), defining all property acquired during the marriage as marital property except for certain limited categories of property which are considered separate or nonmarital, expresses a marked preference for characterizing the property of the parties to a divorce action as marital property.

Further, under our marital distribution law, unless certain factors are present, marital property should be divided equally between the parties to the marriage:

> In the absence of a valid agreement, the trial court in a divorce case shall presume that all marital property is to be divided equally between the parties, but may alter this distribution, without regard to fault, based on consideration of certain statutorily enumerated factors, including: (1) monetary contributions to marital property such as employment income, other earnings, and funds which were separate property; (2) non-monetary contributions to marital property, such as homemaker services, child care services, labor performed without compensation, labor performed in the actual maintenance or improvement of tangible marital property, or labor performed in the management or investment of assets which are marital property; (3) the effect of the marriage on the income-earning abilities of the parties, such as contributions by either party to the education or training of the other party, or foregoing by either party of employment or education; or (4) conduct by either party that lessened the value of marital property. W.Va.Code Sec. 48–2–32(c) (1986).

Syl. Pt. 1, *Somerville v. Somerville,* 179 W.Va. 386, 369 S.E.2d 459 (1988).

George B.W. contends that he was offered and purchased stock in KVR after the parties separated and after the filing of the divorce in this case. Therefore, the stock is sepa-

---

**3.** W. Va.Code 48–2–1(e)(1), provides:

(e) "Marital property" means:

(1) All property and earnings acquired by either spouse during a marriage, including every valuable right and interest, corporeal or incorporeal, tangible or intangible, real or personal, regardless of the form of ownership, whether legal or beneficial, whether individually held, held in trust by a third party, or whether held by the parties to the marriage in some form of co-ownership such as joint tenancy or tenancy in common, joint tenancy with the right of survivorship, or any other form of shared ownership recognized in other jurisdictions without this state, except that marital property shall not include separate property as defined in subsection (f) of this section....

Separate property as set forth in W. Va.Code 48–2–1(f) is defined as:

(f) "Separate property" means:

(1) Property acquired by a person before marriage; or

(2) Property acquired by a person during marriage in exchange for separate property which was acquired before the marriage; or

(3) Property acquired by a person during marriage, but excluded from treatment as marital property by a valid agreement of the parties entered into before or during the marriage; or

(4) Property acquired by a party during marriage by gift, bequest, devise, descent or distribution; or

(5) Property acquired by a party during a marriage but after the separation of the parties and before the granting of a divorce, annulment or decree of separate maintenance; or

(6) Any increase in the value of separate property as defined in subdivision (1), (2), (3), (4) or (5) of this subsection which is due to inflation or to a change in market value resulting from conditions outside the control of the parties.

rate, nonmarital property. We have recognized that "[o]ne of the statutorily enumerated definitions of separate property is: '[p]roperty acquired by a party during a marriage but after the separation of the parties and before the granting of a divorce....' " *White v. Williamson,* 192 W.Va. 683, 689, 453 S.E.2d 666, 672 (1994), quoting W.Va.Code § 48-2-1(f)(5).

The stock at issue here was purchased for $100.00 on September 19, 1995. The circuit court found that the parties were separated on August 10, 1995.[4] Based upon the latter two dates, the stock purchase was made after the parties separated. Therefore, the KVR stock is presumptively by statute, separate property. The family law master found and recommended that the stock was separate, nonmarital property because it was purchased after the parties separated. The circuit court rejected this finding and concluded that the stock was marital property because "it was KVR's regular practice to offer newly hired radiologists the opportunity to become co-owners, generally after a three-year period." We find that in view of the lack of any evidence whatsoever to support this conclusion, the circuit court abused its discretion by rejecting the family law master's finding that the stock was separate, nonmarital property.

■ We have previously held that if during the marriage a contingency to acquire property is obtained, once such contingency is obtained it is marital property. In Syl. Pt. 3 of *Metzner v. Metzner,* 191 W.Va. 378, 446 S.E.2d 165 (1994), we held that: "When a contingent fee contract is acquired during marriage, it is 'marital property' within the meaning contemplated by West Virginia Code Sec. 48-2-1(e)(1)." *See Cross v. Cross,* 178 W.Va. 563, 363 S.E.2d 449 (1987) (this Court recognized that contingent pension benefits should be classified as marital property). A critical requirement of the *Metzner* line of cases is that a party must have acquired an *enforceable contingency* during the

marriage. That is, the contingency must be such that, if a person fulfills the requirements to obtain that which underlies the contingency, he or she can seek legal redress to enforce execution of the contingency. However, this Court has never ruled that an "unenforceable expectation" is sufficient to constitute marital property.

In reviewing the employment contract between George B.W. and KVR, there is absolutely no language or reference of any nature whatsoever regarding George B.W.'s ability to purchase stock in KVR. In fact, the employment contract was for a term of three (3) years with George B.W.'s salary set forth for each year. Sharon B.W. contends that "[i]t is irrelevant that there is no writing to commemorate the agreement between the Defendant and KVR, to the effect that a successful period of employment would lead to an offer of partnership." [5] Unfortunately, the lack of such a contingency to acquire property is a key factor in this case. Although asserted in her brief, Sharon B.W. presents no evidence either orally or in writing to support her contention that during the marriage KVR promised George B.W. it would offer him stock in the corporation, once he met certain requirements. The parties may have hoped such an offer would be made; but, there was no evidence of such a commitment by KVR to George B.W. In fact, the family law master specifically found that not all employees of KVR were offered stock purchases after their employment contract expired. Therefore, consistent with our statutes and case law, George B.W. had no interest in KVR until he was actually offered a stock option. The offer was made to George B.W., in writing, on September 19, 1995. Only on that date, did George B.W. acquire an interest in KVR. Since the parties separated on August 10, 1995, and Sharon B.W. filed her complaint for divorce on August 10, 1995, the

---

4. In making this ruling the circuit court rejected the family law master's recommended finding that the parties separated on April 7, 1995, when Sharon B.W. moved out of the family residence. However, the complaint filed by Sharon B.W. stated that the parties separated on April 7, 1995.

5. Sharon B.W.'s brief also stated the following: "Although the Defendant did not formally acquire KVR stock until after the parties separated, he had a contingent interest from the date he was hired, similar to an interest in non-vested pension benefits, which are includable in equitable distribution."

stock in KVR is the separate, nonmarital property of George B.W.

### B. The Alimony Question

 As has been previously indicated, the family law master recommended that George B.W. pay Sharon B.W. a lump sum of $50,-000.00, as rehabilitative alimony. The circuit court refused to follow that recommendation and instead ordered that George B.W. pay to Sharon B.W. $7,000.00 per month as alimony for three years. In overruling the family law master's recommendation, the circuit court noted that in 1997 George B.W. was earning money at the rate of $665,000.00 per year. In contrast, Sharon B.W. had not been regularly employed outside the home. The circuit court noted that the alimony award of $7,000.00 per month was less than 13 percent of George B.W.'s earnings. The circuit court further concluded that an amount less than $7,000.00 per month would be inappropriate given the lifestyle that Sharon B.W. enjoyed prior to the breakup of the marriage.

 This Court has recognized that "[q]uestions relating to alimony and to the maintenance and custody of the children are within the sound discretion of the court and its action with respect to such matters will not be disturbed on appeal unless it clearly appears that such discretion has been abused." Syllabus, *Nichols v. Nichols,* 160 W.Va. 514, 236 S.E.2d 36 (1977). In the present case where there was evidence that George B.W. has an income exceeding $600,-000.00 a year and where the circuit court awarded Sharon B.W. less than 13 percent of that income as alimony for a limited period of three years, this Court cannot conclude that such an award constituted an abuse of discretion.

### C. Attorney Fees

 The family law master recommended that George B.W. receive complete reimbursement of the attorney fees and expenses which he incurred in "defending" his claim that the KVR stock was his separate proper-

ty. He was also awarded replacement physician fees which he incurred as a result of his attending hearings on the stock issue. The circuit court rejected this recommendation and ordered that George B.W. pay all of Sharon B.W.'s attorney fees and litigation costs.

 This Court has recognized that, in divorce proceedings, a trial court's rulings as to attorney fees should not be disturbed on appeal unless it appears that the trial court abused its discretion. *Rogers v. Rogers,* 197 W.Va. 365, 475 S.E.2d 457 (1996); *Hinerman v. Hinerman,* 194 W.Va. 256, 460 S.E.2d 71 (1995); *Cummings v. Cummings,* 170 W.Va. 712, 296 S.E.2d 542 (1982). Further, in *Hillberry v. Hillberry,* 195 W.Va. 600, 466 S.E.2d 451 (1995), this Court indicated that the principal inquiry in determining whether to compel one party in a divorce action to pay attorney fees and costs to the other party was whether the financial circumstances of the parties suggested that such an award was necessary.

It appears that the family law master in the present case concluded that Sharon B.W.'s claim to a share of George B.W.'s interest in KVR was meritless. As a result of that claim, George B.W. had to incur unnecessary attorney fees and expenses. Citing Rule 20 of the Rules of Practice and Procedure for Family Law, the family law master concluded that George B.W. was entitled to an award of these fees and expenses.[6]

As has already been discussed, the circuit court did not conclude that Sharon B.W.'s claims relating to the KVR stock were meritless. In fact, the circuit court rejected the family law master's recommendation. Although we find that the circuit court committed error in ruling that the KVR stock was marital property, we are not prepared to say that litigating the claim was meritless *ab initio.* We, therefore, do not believe that Rule 20 of the Rules of Practice and Procedure for Family Law supports the recom-

---

6. Rule 20 of the Rules of Practice and Procedure for Family Law provides, in relevant part:

When it appears that a party has incurred unnecessary expenses in a proceeding for temporary relief because the opposing party has raised unfounded claims or defenses, the family law master may recommend and the circuit court may grant an award of attorney fees and costs to the innocent party....

mendation of the family law master. Additionally, it is apparent that George B.W.'s capacity to earn a living, and his current income, are vastly greater than those of Sharon B.W.

Under the overall circumstances, the circuit judge did not abuse his discretion in rejecting the family law master's recommendation relating to attorney fees and in rendering the award which he made regarding the payment of fees.[7]

### IV.

### CONCLUSION

For the reasons stated, this Court affirms in part, reverses in part, and remands this case for entry of an order consistent with this opinion.

Affirmed in Part, Reversed in Part; and Remanded.

---

7. George B.W. also claimed on appeal that the trial court was required to review the family law master's findings of fact under a clearly erroneous standard and that the court did not apply such a standard in overturning certain of the family law master's findings. This Court previously held that factual findings made by a family law master were to be reviewed by a circuit court under a clearly erroneous standard. *See* Syl. Pt. 1 *Stephen L.H. v. Sherry L.H.*, 195 W.Va. 384, 465 S.E.2d 841 (1995) ("A circuit court should review findings of fact made by a family law master only under a clearly erroneous standard, and it should review the application of law to the facts under an abuse of discretion standard"). That standard, however, was expressly modified by the West Virginia Legislature when it adopted W. Va.Code § 48A-4-20(c) (1997). That statute, as adopted, now specifically provides, in relevant part, that:

> Nothing in this subsection shall be construed to authorize a de novo review of the facts; however, the circuit court shall not be held to the clearly erroneous standard in reviewing findings of fact.

The changes brought about by this Code section became effective 90 days after April 12, 1997. The circuit court's review was conducted and a decision was rendered in the present case in 1998. Therefore, this Court believes that con-

trary to George B.W.'s contention, the circuit court in this case was not obligated to apply a clearly erroneous standard in reviewing a family law master's recommendations.

Also, George B.W.'s claims that the trial court did not review the factual record made before the family law master before setting aside certain of the family law master's findings of fact. We find no merit to support this argument. A circuit court is not required in every instance to review the entire record in a case before ruling upon a family law master's recommendations. For instance, W. Va.Code § 48A-4-20 recognizes that in making its recommendations, a circuit court may review the parts of the record cited by the parties.

Finally, George B.W. contends that the circuit court overruled portions of the family law master's recommended decision to which neither party objected. This Court cannot precisely determine what George B.W. is challenging. Therefore, we decline to address those issues. See *State v. Honaker*, 193 W.Va. 51, 56 n. 4, 454 S.E.2d 96, 101 n. 4 (1994) ("In this context, counsel must observe the admonition of the Fourth Circuit that "[j]udges are not like pigs, hunting for truffles buried in briefs" "), quoting *Teague v. Bakker*, 35 F.3d 978, 985 n. 5 (4th Cir.1994), quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir.1991).