**FILED**

**April 15, 2022**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Harold Lee Weaver,**
**Respondent Below, Petitioner**

**vs)  No. 20-0690** (Barbour County 17-D-70)

**Barbara Jo Weaver,**
**Petitioner Below, Respondent**

## MEMORANDUM DECISION

Petitioner Harold Lee Weaver appeals the August 11, 2020, order of the Circuit Court of Barbour County, West Virginia, that denied his appeal from the family court's order.  He raises several assignments of error including the family court's valuation of real property, spousal support, and attorney fees awarded to his former wife, Respondent Barbara Jo Weaver.  She supports the circuit court's ruling and claims that Harold contributed to many of the alleged errors he raises by failing to provide proper financial disclosures.

We conclude the family court's findings on equitable distribution are not clearly erroneous and it did not abuse its discretion in awarding spousal support and attorney fees.  Because we discern no substantial question of law, a memorandum decision affirming the order of the circuit court is the appropriate disposition under Rule 21 of the West Virginia Rules of Appellate Procedure.[1]

### I.  Factual and Procedural History

After fourteen years of marriage, Barbara filed for divorce in August 2017, citing irreconcilable differences.  The parties' twin daughters had been born in February 2003, and Harold had a son from a previous relationship.  At the time of filing, Harold received social security disability benefits.  Barbara worked part-time at Barb's Restaurant, a business they owned, and was the primary caregiver to the parties' children.

The family court entered a temporary agreed order in September 2017, where it noted that, under the parties' agreement, Harold was paying Barbara $3,500 per month for child support and recurring family expenses since their separation; the family court approved that arrangement and deferred ruling on those issues.

---

[1] This Court has considered the parties' briefs, oral argument, and the record on appeal. Harold is represented by counsel, Phillip S. Isner and David C. Fuellhart.  Barbara is represented by counsel, Shannon R. Thomas.

1

After numerous continuances and a failed attempt at mediation, the family court conducted a final hearing on January 14 and 16, 2019. Barbara stated that she still worked part-time at the restaurant. Harold stated that he was receiving social security disability benefits; he had worked as an electrician and was hoping to return to that line of work, part-time, when able. The parties offered their opinions about the value of their personal and real property. They also discussed their monthly expenses and income. Neither party presented witnesses. Barbara testified and introduced twenty-three exhibits and Harold testified but offered no exhibits.

The family court entered its 44-page order on March 5, 2020,[2] and adopted the parties' parenting agreement.[3] It admonished Harold for failing to provide full financial disclosures, stating that "[h]e admitted that he did not list all of the assets, and admitted that he did not make efforts to obtain values of said assets. He made no effort to obtain information about his retirement accounts claiming he did not know he had to do that."

The family court attached an equitable distribution spreadsheet to its order where it listed, valued, and divided, the marital estate that exceeded $580,000. Relevant to the issues raised here, the family court assessed the value of the marital home at $205,000 by crediting Barbara's evidence. She offered an appraisal and the appraised value from the assessor's office. The family court noted that Barbara owned the marital home prior to the marriage, but she executed a deed conveying it to Harold and herself in 2007, to use it as collateral for a loan for the restaurant. At

---

[2] It is unclear why more than a year passed between the final hearing and order. Rule 22(a) of the West Virginia Rules of Practice and Procedure for Family Court provides, in part, that "[a]ll orders shall be entered by the court within 20 days of the hearing, except a temporary support order must be entered within one business day of the hearing[.]"

[3] When discussing child support and spousal support, the family court noted that under the parties' agreement, Harold had paid Barbara $3,500 per month, until he reduced the amount to $2,352 when she began receiving social security disability benefits for the children. The family court noted that the record was not clear when those benefits began. It ruled that Harold would have no child support obligation moving forward so long as Barbara received those benefits for the children. The family court stated

that effective September 1, 2017, through March 31, 2020, for each $3,500.00 payment made by [Harold], to [Barbara], $1,148.00 of that is hereby categorized and designated as child support. For the months that [Harold], paid $3,500.00, this leaves a remainder of $2,352.00 per month for designation. For the months that [Harold] paid $2,352.00 after having reduced the prior amount of $3,500.00 once social security benefits began, that entire amount per month is available for designation.

Later in its order, the family court stated that the "remainder of any undesignated monies referenced herein paid" to Barbara by Harold, "from September 1, 2017, through February 28, 2019, shall be designated as temporary spousal support."

2

that time, the home appraised at $205,000. While Harold stated that an addition had been added to the home that enhanced its value, Barbara disputed that it added any value. She testified that the improvements were started but not completed, and the value of the home had likely decreased from the last appraisal.

The parties had remarkably different opinions about the value of the restaurant; Harold valued it at $350,000, while Barbara valued it at only $75,000. The family court discredited Barbara's low assessment, considering the funds put into the business. It ultimately valued the restaurant at $185,000, noting that the property for the restaurant was purchased in 2005 for $25,000. An initial construction loan of $150,000 and another $185,000 loan was used to purchase equipment, keep it operating, and to pay taxes. So, not all of their investments in the restaurant went toward capital improvements.

The family court assessed the value of a residence that Harold purchased after the parties separated (Jackson Street property) at $65,400, by crediting Barbara's evidence. It noted that Harold purchased the property in 2017 at a liquidation sale for $15,000 and conveyed the property to his son without telling Barbara. Harold lived in this residence since the parties' separation and made significant improvements to it. He testified that the value of the property was $40,000, but Barbara submitted property tax receipts that reflected its assessed value of $65,400.

The family court concluded that an IRA, valued at nearly $260,000, was marital property. While Harold claimed that a portion of the IRA was his separate property because he paid into it before the parties' marriage, the family court found that he failed to meet his burden of showing that any portion of it was separate property. The family court noted the various transfers of funds of this account, including a 2017 transfer where Harold withdrew approximately $130,000 for various reasons including improvements to the Jackson Street property, deposits to his son's bank account, and gifts for the children.

The family court devoted nine pages of its order to the issues of spousal support and attorney fees. It noted that Barbara was 48 years of age and Harold was 63. The family court stated that Harold was approved to receive social security disability benefits of $2,296 per month,[4] and Barbara had a monthly income of less than $900. Listing the *Banker* factors,[5] the family court awarded $6,440 in attorney fees to Barbara. It found that Harold "was less than cooperative with

---

[4] At the time of the hearing, Harold was collecting $1,996 a month because $300 was being deducted to recoup a prior overpayment.

[5] *See* Syl. Pt. 4, *Banker v. Banker*, 196 W. Va. 535, 474 S.E.2d 465 (1996) ("In divorce actions, an award of attorney's fees rests initially within the sound discretion of the family law master and should not be disturbed on appeal absent an abuse of discretion. In determining whether to award attorney's fees, the family law master should consider a wide array of factors including the party's ability to pay his or her own fee, the beneficial results obtained by the attorney, the parties' respective financial conditions, the effect of the attorney's fees on each party's standard of living, the degree of fault of either party making the divorce action necessary, and the reasonableness of the attorney's fee request.").

this entire process[,]" and "[h]is failure to cooperate has significantly increased [Barbara's] attorney fees." Considering the financial situation of the parties, it awarded Barbara $350 a month in permanent spousal support, effective March 1, 2019.

Harold appealed the family court's order to the circuit court, raising the same issues as in this appeal. The circuit court denied the appeal by order entered August 11, 2020. The circuit court stated that it had listened to the audiotape of the family court hearing and was unable to find that the family court's findings were clearly erroneous. It also determined that the family court had not abused its discretion by awarding spousal support and attorney fees to Barbara.

On appeal to this Court, Harold raises six assignments of error. He argues that the circuit court erred by upholding the family court's ruling (1) denying his motion to continue the final hearing, (2) arbitrarily assigning values to the real property of the parties without competent evidence provided by either party as to the value as of the date of separation, (3) not permitting him to testify regarding an appraisal of the restaurant, (4) arbitrarily determining a date before which payments made to Barbara were designated as temporary spousal support and after which were designated as advanced equitable distribution payments, (5) arbitrarily determining that his IRA was entirely marital property instead of partially separate property, and (6) awarding Barbara attorney fees.

## II. Standard of Review

This Court reviews an appeal of a circuit court order adopting a family court's equitable distribution order under the following standard:

> In reviewing challenges to findings made by a family court judge that also were adopted by a circuit court, a three-pronged standard of review is applied. Under these circumstances, a final equitable distribution order is reviewed under an abuse of discretion standard; the underlying factual findings are reviewed under a clearly erroneous standard; and questions of law and statutory interpretations are subject to a *de novo* review.[6]

Under the clearly erroneous rule, we do not reweigh the evidence and we will not reverse a family court's findings simply because we may have viewed the evidence differently.[7]

Finally, an award of attorney fees and spousal support rests within the sound discretion of the family court and will not be disturbed on appeal absent an abuse of discretion.[8]

---

[6] Syl. Pt. 2, *Lucas v. Lucas*, 215 W. Va. 1, 592 S.E.2d 646 (2003).

[7] *Mulugeta v. Misailidis*, 239 W. Va. 404, 408, 801 S.E.2d 282, 286 (2017).

[8] Syl. Pt. 4, *Banker*, 196 W. Va. 535, 474 S.E.2d 465; Syl., *Nichols v. Nichols*, 160 W. Va. 514, 236 S.E.2d 36 (1977).

### III. Analysis

We first consider the assignments of error related to the family court's equitable distribution findings. Harold takes issue with the family court's valuation of the marital residence, restaurant, and the Jackson Street property. He also argues that a portion of his IRA should have been considered separate property.

West Virginia Code § 48-7-101 provides that the family court "shall divide the marital property of the parties equally between the parties." To accomplish this directive, a family court must first identify, then value and divide the marital estate.

> Equitable distribution under W. Va. Code, 48-2-1, *et seq.*, is a three-step process. The first step is to classify the parties' property as marital or nonmarital. The second step is to value the marital assets. The third step is to divide the marital estate between the parties in accordance with the principles contained in W. Va. Code, 48-2-32.[9]

This Court has also held that "[t]he burden is on both parties to the litigation to adduce competent evidence on the values to be assigned in equitable distribution cases."[10] Harold argues that because no competent evidence was presented by either party to determine the value of the marital residence and restaurant at the time the parties separated, the family court should have ordered that those properties be sold. Barbara counters that the family court's valuations were supported by her evidence, and it would be inequitable to force the sale of the restaurant where she works and the home where she lives, especially when she brought that home into the marriage. Harold also argues that the family court's valuation of the Jackson Street property was based on property tax receipts, which are not competent evidence of its fair market value. Barbara counters that Harold should not complain about her evidence showing the value of this property when he failed to even disclose it.[11]

Harold also contends that a portion of the IRA was separate property because it was undisputed that he began work for the union that paid into his IRA "sometime between 1979 and 1984[,]" and this was sufficient to overcome the presumption that the entire IRA was marital property. Barbara counters that the family court properly found that it was impossible to calculate any separate nature of the IRA considering the various transfers and withdrawals from that

---

[9] Syl. Pt. 1, *Whiting v. Whiting*, 183 W. Va. 451, 396 S.E.2d 413 (1990).

[10] Syl. Pt. 8, *Mayhew v. Mayhew*, 197 W. Va. 290, 475 S.E.2d 382 (1996), *overruled on other grounds by Mayhew v. Mayhew*, 205 W. Va. 490, 519 S.E.2d 188 (1999).

[11] *See* Rule 13(b) of the W. Va. R. Prac. Pro. Fam. Ct. ("The failure to file or untimely filing of any required financial information shall not be grounds for a continuance. If a party fails to file or untimely files any required financial information, the court may refuse to grant requested relief to that party, and/or may accept the financial information of the other party as accurate.").

account. And while Harold claimed that he used money from the IRA to pay his temporary spousal support and child support obligations, Barbara notes that he produced no evidence to support the contention—he failed to even provide statements of the account.[12]

Our review of the record uncovers no error by the circuit court in adopting the family court's equitable distribution findings regarding the marital residence, restaurant, Jackson Street property, and IRA. This Court defers to the family court's valuation of marital property when it is not clearly erroneous and within the range of the evidence presented,[13] and parties in a divorce action may offer their opinions as to the value of their property, both real and personal.[14] Here, the family court resolved the conflicting evidence and fairly valued the marital estate based on the testimony presented at the final hearing.[15] And its finding that the entire IRA was marital property was not clearly erroneous when Harold failed to show what portion of the account was his separate property.

Harold next argues that the circuit court erred in upholding the family court's ruling regarding spousal support; he claims that the family court arbitrarily classified money paid to Barbara before March 1, 2019, as temporary spousal support. This argument lacks clarity, but he appears to contend that since the family court awarded Barbara permanent spousal support of $350 a month effective March 1, 2019, that any money paid to her in excess of that amount before that

---

[12] Although he failed to offer any evidence below to identify what portion of the IRA should be considered his separate property, Harold claims that it would be "simple to calculate" that figure based on the ratio of time that he was part of the union prior to the date of the marriage compared to the length of marriage (prior to the date of separation). Harold also argues that because he provided a full release to Barbara to obtain the records relating to the IRA, the "burden of proof regarding whether any portion of the IRA was separate property should have shifted to [her] during the pendency of the case." Harold cites no authority for this proposition, nor do we find any. *See Dahl v. Dahl*, 459 P.3d 276, 298-99 (Utah 2015) (stating appellate courts are not a depository in which a party may dump the burden of argument and research).

[13] *See e.g.*, *Mertz v. Mertz*, 858 N.W.2d 292, 300 (N.D. 2015) ("[T]his Court defers to the district court's valuation of property if it is not clearly erroneous and is within the range of evidence presented.").

[14] *See Mulugeta*, 239 W. Va. at 413, 801 S.E.2d at 291 (stating family court's equitable distribution findings can rest on testimony of a party, even when that party fails to provide supporting documentation).

[15] Although Harold claimed that an appraisal had been conducted of the restaurant around 2005, he did not provide the appraisal during discovery, nor did he present it at the hearing. We find no merit to Harold's claim that the family court committed reversible error by not allowing him to testify to the contents of this appraisal when he failed to provide that document. *See generally Gentry v. Mangum*, 195 W. Va. 512, 518, 466 S.E.2d 171, 177 (1995) ("A party challenging a circuit court's evidentiary rulings has an onerous burden because a reviewing court gives special deference to the evidentiary rulings of a circuit court.").

date should have been considered as advanced equitable distribution payments, not temporary spousal support. Harold claims that the family court provided no reasoning for choosing the March 1 date, and it provided no justification for the disparity between the amount of temporary and permanent spousal support. Harold fails to recognize that the family court categorized some of the $3,500 payments to Barbara before the final hearing as child support.[16] In any event, Barbara counters that the family court's designation of March 1 as the date when permanent spousal support was awarded was logical; the final hearing concluded in January 2019, the parties submitted proposed final orders in February 2019, so the family court's designation of payments was effective the following month. Barbara also argues that the family court made substantial findings regarding spousal support that are supported by the record.

The family court's order reflects that it properly considered the 20 factors listed in West Virginia Code § 48-6-301(b) when awarding Barbara temporary spousal support for the time she was paying family expenses to maintain their standard of living pending the final hearing. We agree with the circuit court that the family court's temporary spousal support award was well within its wide discretion.[17]

Finally, Harold contends that the circuit court erred in upholding the family court's award of $6,440 in attorney fees to Barbara. He argues that the *Banker* factors[18] weigh against the award. Harold questions Barbara's claim that she was experiencing financial difficulties considering that she testified to making an $800-a-month car payment. Harold also notes that she was awarded permanent spousal support and a large equalizing payment in equitable distribution. Barbara counters that the family court properly weighed the *Banker* factors. She notes that Harold had historically higher income and sufficient funds to give substantial gifts to the children during the pendency of the action while she experienced a deficit each month. Barbara also states that the family court appropriately found that Harold's failure to cooperate throughout the proceedings significantly increased her attorney fees.

In *Hillberry v. Hillberry*,[19] we stated that the principal inquiry in determining whether to compel one party in a divorce action to pay attorney fees to the other party was whether the financial circumstances of the parties suggested that an award was necessary. This Court is unable

---

[16] *See* note 3, above.

[17] *See Mulugeta*, 239 W. Va. at 410, 801 S.E.2d at 288 ("We recognize that as long as the family court fully considers the mandatory statutory factors, and its award of spousal support is within the parameters of reasonableness, this Court should not disturb the award on appeal.").

[18] *See* note 4, above.

[19] 195 W.Va. 600, 466 S.E.2d 451 (1995).

to conclude that the family court abused its discretion in awarding attorney fees to Barbara considering their respective financial conditions.[20]

## IV. Conclusion

For the reasons set forth above, we affirm the August 11, 2020, order of the Circuit Court of Barbour County.

Affirmed.

**ISSUED:** April 15, 2022

**CONCURRED IN BY:**

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice Alan D. Moats, sitting by temporary assignment.

---

[20] We also agree with the circuit court that the family court did not abuse its discretion in denying Harold's motion to continue the final hearing. Harold claimed that he was served with several exhibits by Barbara's counsel immediately prior to the final hearing, but he does not describe with any specificity what information was contained in the exhibits that he did not already have or explain how he was prejudiced by going forward with the hearing. In contrast, Barbara states that the exhibits were previously disclosed, and she simply provided them again in the order she planned to present them to the family court, with labels and cover sheet, as a courtesy.