# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Vernon M.,**
**Respondent Below, Petitioner**

**FILED**

**February 15, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.)  No. 18-0041** (Nicholas County 16-D-145)

**Jan M.,**
**Petitioner Below, Respondent**

## MEMORANDUM DECISION

Petitioner Vernon M., by counsel Christopher T. Pritt, appeals the Circuit Court of Nicholas County's December 18, 2017, order affirming, with one modification, the family court's final divorce order.[1] Respondent Jan M., by counsel Harley E. Stollings, filed a response in support of the circuit court's order and a supplemental appendix. On appeal, petitioner argues that the family court erred in (1) finding that he sought to delay the proceedings; (2) finding that he was not transparent regarding his sexual relations; (3) finding that respondent's business interest did not cease after petitioner removed her name from the filings with the West Virginia Secretary of State; (4) finding that he attempted to hide a tool trailer; (5) refusing to order the sale or refinancing of the marital home; and (6) awarding attorney's fees.[2]

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

[2]Petitioner additionally raises a seventh assignment of error that, at various points in his brief to this Court, is asserted as an allegation that the family court "erred and abused its discretion when it designated the primary residential parent and failed to properly apply the factors found in the West Virginia Code" or "exceeded its authority when it awarded the Petitioner visitation limited to weekend visits only." We note, however, that petitioner has waived this assignment of error through his failure to raise it on appeal to the circuit court. The record shows that on appeal to the circuit court petitioner raised fifteen assignments of error, none of which concerned the allocation of custodial responsibility for the parties' children or respondent's designation as their primary residential custodian. The only assignment of error before the circuit court that could be construed as addressing this issue is petitioner's assertion that "[t]he Court ignored the unrefuted evidence . . . that [respondent] had allowed her father, who is schizophrenic, to watch the minor children." This is simply insufficient to preserve petitioner's assignment of error on appeal to this Court. Pursuant to Rule 10(c)(7) of the West Virginia Rules of Appellate procedure, a petitioner's brief is required to contain an argument section that "must contain appropriate and specific citations to the record on appeal, including

(continued . . . )

1

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The parties were married in Nicholas County, West Virginia, in August of 2003.[3] Three children were born of the marriage before the parties separated on or about July 17, 2016. That same month, respondent filed a petition for divorce in which she alleged irreconcilable differences, cruelty, and adultery. Petitioner thereafter filed an answer and denied the fault grounds of cruelty and adultery, although he admitted the existence of irreconcilable differences. Petitioner additionally filed a counter-petition wherein he alleged irreconcilable differences and the fault ground of cruelty by respondent.

In August of 2016, the family court issued a temporary order, followed by a second temporary order in September of 2016. The family court then entered a "Bifurcated Order on Certain Equitable Distribution Issues" on November 21, 2016. Following these orders, both parties filed multiple petitions for civil contempt against the other. The family court then held a

---

citations that pinpoint when and how the issues in the assignments of error were *presented to the lower tribunal*." (Emphasis added). Petitioner failed to comply with this requirement, given that the issue was not raised in the lower tribunal – the circuit court – that issued the order on appeal. Additionally, this Court has long held as follows: "'Our general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered.' *Shaffer v. Acme Limestone Co., Inc.*, 206 W.Va. 333, 349 n. 20, 524 S.E.2d 688, 704 n. 20 (1999)." *Noble v. W.Va. Dep't of Motor Vehicles*, 223 W.Va 818, 821, 679 S.E.2d 650, 653 (2009). Accordingly, we decline to address this assignment of error, in either of its stated forms, on appeal.

[3]At the outset of this matter's procedural history, the Court notes that petitioner's statement of the case is deficient. According to Rule 10(c)(4) of the Rules of Appellate Procedure, a petitioner's brief "shall contain" the following:

> *Statement of the Case*: Supported by appropriate and specific references to the appendix or designated record, the statement of the case must contain a concise account of the procedural history of the case and a statement of the facts of the case that are relevant to the assignments of error.

Although petitioner's brief does contain a section entitled "Statement Of The Case," this section fails to comply with the requirements of Rule 10(c)(4) in that it contains no specific references to the appendix nor any account of the procedural history or facts relevant to the assignments of error. In fact, the section includes only four sentences, three of which assert various alleged errors in the family court's rulings. We note that this is insufficient for a case with such a protracted procedural and factual history.

final hearing on all the petitions for contempt on March 7, 2017, before entering final orders on the petitions later that same month. On April 4, 2017, respondent filed a "Petition for Contempt Finding and Seeking Criminal Prosecution of [Petitioner]" that alleged that petitioner's actions constituted criminal contempt of the family court's earlier bifurcated order. The matter was transferred to the Circuit Court of Nicholas County for further disposition.

In March, April, and July of 2017, the family court held hearings on the petition for divorce. During the hearings, petitioner refused to admit the existence of irreconcilable differences, despite his allegations and admissions contained in his counter-petition and answer. During the proceedings, petitioner's girlfriend testified that she met petitioner through a dating website around June of 2016. She further testified that, prior to July 17, 2016, she went on a date with petitioner and had sexual relations with him. She further testified that petitioner told her he was married at the time. In relation to the adultery claim, respondent additionally testified that petitioner admitted to having extra-marital affairs and blamed her for them after she confronted him with evidence of the affairs. Additionally, respondent introduced photographs of a man's penis in close proximity to a woman's genitals. According to respondent's testimony, the penis depicted in the photographs was, "without question," petitioner's and the woman's genitals were not hers. Petitioner did not deny that the photographs "could possibly depict his penis. . . ."

When questioned about adultery, petitioner asserted his Fifth Amendment right against self-incrimination "since the crime of adultery is still 'on the books.'" After the family court informed petitioner that it would make an adverse inference in relation to his silence, in accordance with *West Virginia Department of Health and Human Resources ex rel. Wright v. Doris S.*, 197 W.Va. 489, 475 S.E.2d 865 (1996), petitioner informed the family court that he "wanted to have total transparency" on the issue. The family court ultimately found, however, that petitioner "was never transparent . . . concerning these allegations." According to petitioner's testimony, respondent condoned his affairs because she voluntarily had sexual relations with him subsequent to the adultery, although he provided inconsistent testimony concerning the number of times such sexual relations occurred. Respondent additionally admitted that the parties engaged in sexual relations on three or four occasions after they separated and at a time when she had knowledge of his adultery.

Respondent additionally testified in support of her allegation of cruelty and, based on this testimony, the family court found that petitioner "was physically abusive and mentally abusive" of respondent. This finding was based upon respondent's testimony that on July 17, 2016, petitioner

> [b]roke furniture and furnishings in the marital home; refused to allow [respondent] to leave their bedroom by blocking the door; interfered with [respondent's] ability to make a telephone call seeking help by taking the telephone from [respondent's] sister and cancelling the sister's call to the 911 operator; and disabling [respondent's] vehicle with the intention of denying [respondent] the ability to flee the marital domicile.

According to the family court, petitioner's actions "resulted in [respondent] . . . obtaining a domestic violence protective order" against him. Based on this evidence, the family court found

that petitioner's behavior constituted cruel and inhuman treatment and entitled respondent to a divorce on grounds of cruelty.

The family court additionally made extensive findings concerning the allocation of custodial responsibility to the children that are not relevant to this appeal. The family court further found that evidence of e-mails "clearly prov[ed] that [petitioner] . . . violated the Court's Order entered on November 21, 2016, by communicating with sexual partners during his parenting time with the children."

The family court further undertook equitable distribution of the parties' assets and debts, including a trucking business, VLM Truck Lines, LLC, ("VLM") established during the marriage. According to the family court, the business "was in operation at the time of the parties' separation and had assets at that time." Additionally, "[a]t the time of separation, [respondent] was listed as a member of the LLC on the records maintained by the West Virginia Secretary of State." However, "[a]round the date of separation, [petitioner] unilaterally removed the name of [respondent]" from those records. Ultimately, the family court found that petitioner "presented no evidence to rebut the presumption that the assets of [the business] are to be divided equally" between the parties. As such, the family court found that the assets should be ascertained, valued, and equitably divided.

The family court also heard evidence concerning a tool trailer. Petitioner testified that he last saw it on the property of another individual and that ownership was transferred in January of 2016 as payment for services rendered and the use of a garage and tools. Respondent, however, testified that she was not informed of this transaction and that the trailer was parked below the parties' home after they separated. On this issue, the family court found "the testimony of [respondent] to be credible . . . and that [petitioner] . . . attempted to hide this marital asset after the parties separated." As such, petitioner was ordered to return the trailer and its contents so that it could be sold in accordance with the court's orders. The family court further awarded respondent the ownership of the marital home, "with compensation to [petitioner] for his interest there in the amount of $20,816.00."

Finally, as it relates to this appeal, the family court awarded respondent attorney's fees, in part, due to "many instances of [petitioner's] oppressive and otherwise bad conduct." According to the family court, petitioner's conduct resulted in "multiple contempt petitions" in addition to "the delayed settlement of an insurance claim and the delayed sale of personal property" under the terms of the family court's orders. As such, the family court awarded respondent $10,452.05, which constituted seventy percent of her reasonable attorney's fees.

In October of 2017, petitioner appealed the family court's order to the circuit court. Ultimately, the circuit court affirmed the family court's order, although it also modified the payment petitioner owed respondent in relation to a vehicle. According to the circuit court, although the family court did not err in finding that a vehicle was marital property, "[i]t . . . appear[ed] however that [petitioner] was charged with this money twice" which resulted in respondent "receiving an extra award of $2500.00." As such, the circuit court affirmed the family court's order, with a modification "to the extent that the equalizing payment [petitioner]

owes [respondent] is reduced to $7996.68." It is from the circuit court's December 18, 2017, order affirming the family court's order that petitioner appeals.

The Court has previously held as follows:

> "A circuit court should review findings of fact made by a family [court] only under a clearly erroneous standard, and it should review the application of law to the facts under an abuse of discretion standard." Syl. Pt. 1, *Stephen L.H. v. Sherry L.H.*, No. 22084, 195 W.Va. 384, 465 S.E.2d 841 (W.Va. March 6, 1995).

Syl. Pt. 1, *Hillberry v. Hillberry*, 195 W.Va. 600, 466 S.E.2d 451 (1995). Further,

> "[i]n reviewing challenges to findings made by a family [court] that also were adopted by a circuit court, a three-pronged standard of review is applied. Under these circumstances, a final equitable distribution order is reviewed under an abuse of discretion standard; the underlying factual findings are reviewed under a clearly erroneous standard; and questions of law and statutory interpretations are subject to a *de novo* review." Syl. Pt. 1, *Burnside v. Burnside*, 194 W.Va. 263, 460 S.E.2d 264 (1995).

*Hillberry*, 195 W.Va. at 602, 466 S.E.2d at 453, syl. pt. 2. Upon our review, we find no error in the ruling below.

First, petitioner alleges that the family court erred in finding that he was motivated to delay the proceedings when "no evidence was produced to show this. . . ."[4] On the contrary, the record does contain evidence in support of this finding. Specifically, the family court made this finding in regard to petitioner's request to amend his responsive pleading to deny the existence of irreconcilable differences. This request was made approximately ten months after petitioner not only admitted to irreconcilable differences in his answer, but further asserted irreconcilable differences as a ground for divorce in his own counter-petition. Furthermore, the request was made during a final hearing in July of 2017, which constituted the third final hearing held in the matter. As the family court found, "during the course of the hearings on March 7, 2017, April 6, 2017, and July 13, 2017, [petitioner] refused to admit the existence of irreconcilable differences in open court." As such, it is clear, as the family court found, that petitioner "had more than ample time between the dates of the final hearings held on March 6, 2017[,] and July 13, 2017[,] to amend his pleadings." Accordingly, the family court found that petitioner's "actions were intended to delay these proceedings as long as possible." Indeed, as the circuit court found, "upon review of the hearing videos there is ample evidence of [petitioner's] evasive tendency."

---

[4]This constitutes petitioner's entire argument on this point, as presented in an argument section that amounts to four sentences and is entirely devoid of any legal authority. This is in contravention to our rules. *See* W.Va. R. App. Pro. 10(c)(7) ("The brief must contain an argument exhibiting clearly the points of fact and law presented . . . and citing the authorities relied on, under headings that correspond with the assignments of error.").

Given the overwhelming evidence that petitioner waited until the last possible minute to request leave to amend his pleadings, we find no error in the family court's findings.

Next, petitioner argues that the family court erred in finding that he was not transparent regarding his sexual relations because there was no evidence to support this finding. Petitioner recognizes that "the prevailing rule [is] that the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them. . . ." *Doris S.*, 197 W.Va. at 498, 475 S.E.2d at 874 (quoting *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976)). However, he further argues that he only briefly invoked the protection against self-incrimination before going on to testify regarding his extra-marital affairs. As such, he argues that it was error for the family court to make an inference against him after he withdrew his invocation of the Fifth Amendment. We find no merit to this argument, however, as it is clear that the family court did not infer dishonesty in relation to petitioner's invocation of the Fifth Amendment, but rather made a credibility determination based upon the evidence before it.

The basis for the court's determination included testimony from petitioner's girlfriend regarding their sexual intercourse prior to the parties' separation, respondent's testimony that petitioner admitted to – and blamed her for – his affairs, and petitioner's refusal to acknowledge that a photograph admitted into evidence depicted his penis, despite respondent's testimony that "without question, the penis depicted in the photograph is that of" petitioner. Additionally, the circuit court found that a review of the hearing videos "indicates that during his testimony [petitioner] refused to provide straightforward answers when questioned about his non-marital relations." As this Court has long held, "[a]n appellate court may not decide the credibility of witnesses . . . as that is the exclusive function and task of the trier of fact." *Miller v. Chenoweth*, 229 W.Va. 114, 121, 727 S.E.2d 658, 665 (2012) (*quoting State v. Guthrie*, 194 W.Va. 657, 669 n.9, 461 S.E.2d 163, 175 n.9 (1995)). Given that the family court clearly did not find petitioner's testimony on this issue credible, we find that petitioner is entitled to no relief.

Next, petitioner argues that the family court erred in awarding respondent equitable distribution of income earned from VLM after the date of separation, at which point petitioner had unilaterally removed respondent from the business's registration with the West Virginia Secretary of State. According to petitioner, "he disputes that business activity with a business not titled in the name of [r]espondent has a marital component." In making this argument, petitioner relies solely on the following language from West Virginia Code § 48-1-237 defining separate property to include "[p]roperty acquired by a party during a marriage but after the separation of the parties and before ordering an annulment, divorce or separate maintenance[.]" Petitioner's argument, however, ignores the fact that the family court found that "[t]he parties are the owners" of this business. In fact, petitioner does not dispute that the parties acquired the business during the marriage, prior to the separation, and jointly owned it.

According to West Virginia Code § 48-1-233,

"Marital property" means: (1) All property and earnings acquired by either spouse during a marriage, including every valuable right and interest, corporeal or incorporeal, tangible or intangible, real or personal, regardless of the form of

ownership, whether legal or beneficial, whether individually held, held in trust by a third party, or whether held by the parties to the marriage in some form of coownership such as joint tenancy or tenancy in common, joint tenancy with the right of survivorship, or any other form of shared ownership recognized in other jurisdictions without this State[.]

Indeed, this Court has long held that

"W.Va.Code [§ 48-1-233], defining all property acquired during the marriage as marital property except for certain limited categories of property which are considered separate or nonmarital, expresses a marked preference for characterizing the property of the parties as marital property." Syl. pt. 3, *Whiting v. Whiting*, 183 W.Va. 451, 396 S.E.2d 413 (1990).

Syl. Pt. 1, *Koontz v. Koontz*, 183 W.Va. 477, 396 S.E.2d 439 (1990). As such, it is clear that VLM was properly considered marital property.

Despite recognizing the facts surrounding the circuit court's finding in this regard, petitioner argues that his unilateral removal of respondent from the company's registration with the Secretary of State is sufficient to establish that he should be entitled to all income obtained through the business following that act. We disagree, as petitioner has failed to cite to any authority that would permit him to unilaterally convert VLM from marital property to separate property by removing respondent's name from the business's registration. As the circuit court found, petitioner "does not have the right to unilaterally strip [respondent] of her ownership rights in the business any more than he does other marital property." Simply put, the definition of separate property upon which petitioner relies is inapplicable, given the ample evidence that the parties jointly owned the business and acquired it prior to their separation. Because it is clear that VLM was acquired during the marriage, the family court did not err in finding that petitioner "presented no evidence to rebut the presumption that the assets of VLM . . . are to be divided equally" between the parties. This included "[a]ll the income generated by VLM . . . , less operating expenses" with no exclusion for income generated following the parties' separation. Accordingly, petitioner is entitled to no relief in this regard.

In his next assignment of error, petitioner argues that the family court erred in awarding the former marital home to respondent without ordering her to immediately sell or refinance the property. According to petitioner, West Virginia Code § 48-7-101 indicates that family courts are required to "divide the marital property of the parties equally between the parties." However, he asserts that the family court actually engaged in an unequal distribution of property when it granted respondent five years within which to refinance the property, during which time "[t]his asset will show on his credit and, effectively ruining [sic] his ability to borrow money." According to petitioner, "[t]his creates an unequal distribution of marital property." We do not agree, especially in light of the fact that petitioner entirely ignores that he was compensated for his portion of the marital home. As the family court ruled in its "Bifurcated Order On Certain Equitable Distribution Issues," respondent was ordered to pay petitioner "the sum of $20,816.00, or like credit in value of marital property in consideration for his interest in the said real estate." As such, it is clear that the family court distributed the marital home equally, petitioner's

argument regarding refinancing notwithstanding. Additionally, we agree with the circuit court that "[t]he allowance of five (5) years to refinance the home is not an abuse of the Family Court[']s discretion." As such, petitioner is entitled to no relief in this regard.

Next, petitioner argues that the family court erred in finding that he attempted to hide a tool trailer despite the fact that his unrebutted testimony established that he transferred ownership of the trailer prior to the parties' separation as payment for services rendered. However, petitioner fails to acknowledge that his testimony was rebutted, in that respondent specifically testified that she was unaware of any such debt and that she saw the trailer parked near the marital home "at a location often used to park VLM's vehicles and equipment" well after the parties' separation. Again, this issue was determined on the basis of credibility and, like the circuit court found, "[t]he Family Court found [respondent's] testimony to be . . . more credible." As such, we find no error in the family court's findings in regard to the tool trailer at issue.

Finally, petitioner argues that the family court erred in awarding respondent attorney's fees. In support, petitioner argues that respondent did not "ultimately[] receive[] a beneficial result considering this matter has been appealed." According to petitioner, he "succeeded on the Circuit Court level" because he was awarded a modification of the family court's order. Further, petitioner asserts that the family court erred in citing fault as a basis for its award of attorney's fees since the parties had consensual marital relations following their separation. According to petitioner, by engaging in this act, respondent led him "to believe that reconciliation was a possibility" which "had an affect [sic] on [his] assessment as to whether [he] should continue litigating a divorce or to acquiesce." Upon our review, however, we find no error in the family court's award of attorney's fees.

This Court has previously held as follows:

> "In divorce actions, an award of attorney's fees rests initially within the sound discretion of the family [court] and should not be disturbed on appeal absent an abuse of discretion. In determining whether to award attorney's fees, the family [court] should consider a wide array of factors including the party's ability to pay his or her own fee, the beneficial results obtained by the attorney, the parties' respective financial conditions, the effect of the attorney's fees on each party's standard of living, the degree of fault of either party making the divorce action necessary, and the reasonableness of the attorney's fee request." Syl. pt. 4, *Banker v. Banker*, 196 W.Va. 535, 474 S.E.2d 465 (1996).

Syl. Pt. 3, *Mayle v. Mayle*, 229 W.Va. 179, 727 S.E.2d 855 (2012). The family court undertook a full analysis of all the applicable factors, finding that most weighed in favor of respondent. Contrary to petitioner's argument on appeal, the family court specifically found, in relation to the factor addressing the beneficial results obtained by the attorney, that respondent's "attorney has obtained beneficial results in nearly every aspect of this case that involves equitable distribution of a business and complex custody matters." Accordingly, the family court found that this factor weighed in respondent's favor. We agree and find that petitioner's argument on this issue is not persuasive.

Specifically, the mere fact that petitioner has appealed from the family court's decision does not erase the beneficial results respondent's attorney obtained below. Further, the fact that petitioner was successful in obtaining a small modification of the family court's order on appeal to the circuit court does not render the family court's finding on this factor erroneous. Indeed, after awarding petitioner the modification, the circuit court nonetheless went on to affirm the family court's award of attorney's fees based on its thorough analysis of the issue.

Further, we do not agree that the fact that respondent engaged in consensual marital relations with petitioner following their separation renders the family court's analysis of fault weighing in respondent's favor erroneous. Petitioner's sole basis for this argument is that by leading him to believe reconciliation was possible, respondent affected his assessment as whether he should "continue litigating" the divorce or acquiesce. This argument simply has no basis in fact, as the record shows that petitioner contentiously litigated all aspects of the divorce action below. On the contrary, the family court found that petitioner "committed gross misconduct against" respondent, including cruelty. We agree, and find no error in the family court's finding that this factor weighed in respondent's favor.

Further, in addition to the relevant factors addressed above, the family court made other findings in accordance with West Virginia Code § 48-1-305(c), which provides that

> [w]hen it appears to the court that a party has incurred attorney fees and costs unnecessarily because the opposing party has asserted unfounded claims or defenses for vexatious, wanton or oppressive purposes, thereby delaying or diverting attention from valid claims or defenses asserted in good faith, the court may order the offending party, or his or her attorney, or both, to pay reasonable attorney fees and costs to the other party.

According to the family court, "the record contains many instances of [petitioner's] oppressive and otherwise bad conduct" that resulted "in multiple contempt petitions" and further "delayed settlement of an insurance claim and the delayed sale of personal property under the terms of the bifurcated equitable distribution order." The family court further found that petitioner "attempted to conceal multiple assets" from respondent. As such, the family court concluded that "[i]t would be error . . . to deny [respondent] a substantial portion of her reasonable attorney's fees and costs." We agree and find that petitioner is entitled to no relief in this regard.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** February 15, 2019

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison

9